No. 83-92

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

_____

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

GEORGE CHAPMAN,

Defendant and Appellant.

_____

APPEAL FROM: District Court of the Second Judicial District,
In and for the County of Silver Bow,
The Honorable Arnold Olsen, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Brad L. Belke argued, Butte, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Mark Murphy argued, Asst. Atty. General, Helena
Robert M. McCarthy, County Attorney, Butte, Montana
Christopher Miller argued, Deputy County Atty, Butte

_____

Submitted: September 14, 1983

Decided: March 30, 1984

Filed: MAR 30 1984

_Ethel M. Harrison_

Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendant, George Chapman, appeals from a Silver Bow County District Court judgment entered on a jury verdict finding him guilty of criminal sale of dangerous drugs. The charges stem from an alleged sale of drugs to an undercover police agent in Butte, Montana. Defendant raises three issues, all relating to his claim that he was entrapped by the paid informant. We reverse and order a new trial.

For a period of approximately a month and a half before the alleged sale, an undercover, paid State informant made repeated contacts with the defendant, asking defendant to obtain drugs for the informant. Out of this contact defendant relied on two defenses. First, defendant claimed he could not be convicted because, under the theory set forth in Adams v. United States (1955), 220 F.2d 297, he was merely a messenger for the State. Second, that because of State activity in soliciting him to buy drugs, he was entrapped. Defendant claims that both these defenses entitle him to dismissal of the charges as a matter of law.

The third, fourth, and fifth issues concern his claim that he was denied his right to fully present his entrapment defense. Defendant claims that he was denied the right to obtain the name and address of the informant; defendant claims that he was denied the right to have a key witness testify because the trial court abused its discretion in not granting immunity to the witness before that witness would testify; and defendant claims that he was denied the right to present testimony from another witness who could testify that the informant used similar and harassing techniques on her family to wear down their resistance to obtain drugs on

behalf of the informant. The manner in which the issues were raised at trial follows.

At the pre-trial omnibus hearing, defendant moved that the informant's identity and whereabouts be disclosed so that defendant could call him as a witness. The State resisted and the trial court denied the motion. Before trial began, defendant again renewed his motion to compel disclosure of informant's name and address, but the court again denied this motion. Alternatively, in the event the trial court denied this motion, defendant asked through a motion in limine that the undercover agent be instructed not to mention any conversation he had with the informant because the defendant had no opportunity to test those conversations. This motion was also denied.

To further establish his entrapment defense, defendant attempted to present testimony of a witness who was with the informant in most of his contacts with the defendant, and who, according to defendant, could establish that the informant used persistent and harassing techniques to wear down the defendant's resistance to sell drugs. Defendant attempted to present this testimony at trial, but the trial court refused to grant immunity to the witness, and so denied defendant the opportunity to present testimony on the methods used by the informant in setting up the drug purchases to facilitate a prosecution for sale of drugs.

And to also present his entrapment defense, defendant attempted to present the testimony of a witness who, according to the defendant, experienced or witnessed the same kind of harassment by the informant that defendant experienced. At the pre-trial hearing, the court sustained the State's objection and refused to allow the witness to

testify. At trial the defendant again attempted to present this testimony, but the trial court sustained the State's objection, ruling that the testimony was irrelevant.

Because defendant was left with only his own testimony and that of his wife to establish his entrapment defense, defendant contends in essence that he was effectively stripped of his right to present a meaningful defense. Although we do not agree that defendant established entrapment as a matter of law based on the trial record, we do agree that he was effectively denied his right to present his entrapment defense. Therefore, a new trial is required.

Defendant was arrested on March 3, 1982, and charged with criminal sale of dangerous drugs. The arrest was based on events of March 1, 1982, when defendant allegedly sold amphetamines to an undercover agent, who made the contact with defendant through efforts of the informant.

The Montana Attorney General's office contacted the Butte-Silver Bow Sheriff's Department in January 1982, two months before the arrest, and asked if the sheriff could use an undercover informant in the Butte area. The sheriff believed there would be a use for an informant. In late January 1982, the Attorney General's office sanctioned and approved placement of an informant known as "JR" in Butte. Informant and his wife met with the Butte Sheriff's Department, and he was instructed to go "underground" and gain information about illegal drug activity in Butte. Informant was given a vehicle, a room, money for drug purchases, limited pay, as well as a list of suspected drug dealers. The informant was to infiltrate the illegal drug circles, and prepare for the entry of an undercover agent,

Tom Adamo. Adamo would then participate in a purchase of drugs, upon which a prosecution would be based.

In February 1982, the informant became acquainted with William Worley, who had been living with defendant and his wife since December 1981. Worley became one of the informant's contacts with the Butte drug community. Informant saw Worley at defendant's home frequently. Each time informant came to defendant's house, he either brought drugs with him, or would go with Worley to buy drugs. Usually, informant and Worley returned to defendant's house, and used drugs in the presence of defendant and his wife. Defendant and his wife testified that each time informant was at their house, he asked defendant to buy drugs for him.

Worley left Butte during the last week of February, 1982. After this, informant continued to phone defendant's house for Worley. The informant also frequently stopped by defendant's house, looking for Worley, and repeatedly asked defendant to sell him drugs. Defendant told the informant that Worley left town, and that he, the defendant, was not part of the drug scene, and did not have drugs to sell.

On March 1, 1982, defendant was at a bar in Butte. The informant and his wife were there, and both approached defendant. The informant asked the defendant to sell him drugs, but the defendant said he had no drugs to sell. The informant then told defendant that his "brother" (who was Adamo, the undercover agent) was coming to town, and would need drugs because he was an addict. The informant asked if defendant knew of anyone who sold drugs. Defendant denied any knowledge of current drug activity and left the bar.

Later that same evening, the informant, his wife and the undercover agent arrived uninvited at defendant's house. The

- 5 -

undercover agent, Adamo, was introduced as the informant's brother.

The undercover agent testified that when he and the informant were at the defendant's residence, the defendant showed no reluctance to buy drugs for them. The undercover agent also testified that he did not have any alcohol with him when he entered defendant's residence. In contrast, both defendant and his wife testified that the informant and undercover agent were in their house a half hour and repeatedly asked defendant to purchase drugs for them. Defendant and his wife testified that the undercover agent acted very nervous and shaky, and they interpreted his behavior as drug withdrawal. Defendant's wife also testified that the undercover agent offered her 17 month old child a sip of beer from the can she claims he was holding. She testified that at this point she asked defendant to do anything necessary to get the informant, his wife, and undercover agent out of the house.

The remaining facts are not in dispute. Defendant went with the informant, informant's wife and the undercover agent to a house on Evans Street in Butte. Defendant testified he purchased drugs from the occupant of the house when he was an addict, but not recently. Defendant went into the house to determine if any amphetamines were available. He came back to the car and told the informant and the undercover agent they could buy a half gram of amphetamines for $50. The undercover agent gave the defendant $50, and the defendant returned to the car and gave the drugs to the undercover agent. The group returned to defendant's residence.

Outside of his house, defendant indicated the informant and the undercover agent could come in and use the

- 6 -

amphetamines. Defendant testified he made this offer because he was becoming suspicious, and wanted to know that all the drugs were used. He testified he made it clear he would not use the amphetamines himself. The undercover agent testified, however, that he believed defendant made the offer because defendant wanted some drugs as his payment for obtaining the amphetamines for the undercover agent. The informant and the undercover agent refused to go in and left defendant at his house. Defendant received neither money nor drugs as payment for finding a drug source for the undercover agent. Two days later defendant was arrested and charged under section 45-9-101, MCA, with the felony sale of dangerous drugs for the act of giving the drugs to the undercover agent.

Based on Adams v. United States, supra, defendant argues that his conviction for sale cannot stand. He contends that he was merely a messenger -- he had no drugs in his possession, he never had control of the drugs, and he received no compensation. He contends he merely carried the money from the car to the house, and the drugs from the house to the car, and that he was at all times acting only as a messenger of the State agent. However, we decided in State v. Davis (Mont. 1980), 620 P.2d 1209, 37 St.Rep. 1958, that we would broadly interpret our statute to include the transfer of drugs to an undercover agent as sufficient to constitute the offense of sale of dangerous drugs. We recognized in Davis, relying on authority from New Hampshire and Kansas, that a defendant need not possess "title" to the drugs nor need he receive valuable consideration to constitute the offense of criminal sale of dangerous drugs. Davis, supra, 620 P.2d at 1215, 37 St.Rep. at 1964. We

- 7 -

recognized that delivery was an integral part of the sale of drugs and therefore that a sale did not end with the payment of money.

Here Chapman made the arrangements for the undercover agent to purchase the drugs, and though Chapman had no title or possession of the drugs other than to carry the drugs to the car for delivery to the agent, his participation in the delivery of the drugs made him, under the Davis rationale, more than a mere messenger of the State. Therefore, Chapman could properly be charged with the sale of dangerous drugs under section 45-9-101, MCA. However, the question of whether Chapman was entrapped is yet another question that only another jury trial can determine.

Defendant next claims he established entrapment as a matter of law, and that the charges should have been dismissed. At the pre-trial hearing on entrapment and at the trial, defendant attempted to present testimony of two witnesses to prove that he was induced to sell drugs to the undercover agent. The trial court refused to allow the testimony, ruling that it was irrelevant. Because the trial record reveals conflicting testimony regarding the defendant's intent and predisposition to commit the crime, the question of entrapment was for the jury to determine. However, as we discuss below, we have no doubt that defendant was deprived of his right to present testimony of the informant and the two witnesses whose testimony was vital to the establishment of the entrapment defense.

Defendant next contends the court erred in refusing to require disclosure of the informant's identity and address. Montana has recognized the rule of privilege for the identity of an informer and codified it in Rule 502, Mont.R.Evid.,

- 8 -

adopted in 1977. This rule allows the government to refuse to disclose the identity of an informant, subject to certain exceptions. The exception applicable in this case provides that if an informant can give testimony relevant to any issue in a criminal case, and the government claims the privilege, the trial court must determine if the defendant's right to prepare his defense will be impinged by the government's interest in protecting the flow of information by informants. If the trial court determines that the defendant's rights will be violated if the informant is not identified, and the government refuses to identify the informant, the court must dismiss the charges against the defendant. Even before this rule was adopted, Montana followed the same balancing test, which was set forth by the United States Supreme Court in Roviaro v. United States (1959), 353 U.S. 53, 77 S.Ct. 623, 11 L.Ed.2d 639.

In Roviaro, defendant delivered heroin to an informant and was charged with knowingly possessing and transporting unlawfully imported heroin. Roviaro's pre-trial motions for disclosure of informant's identity were denied. The motions were not based on a defense of entrapment, but that informant was the only other one actually taking part in the transaction. The United States Supreme Court held that when, in the interests of fundamental fairness, disclosure of an informant's identity is relevant and helpful to the defendant's defense, or essential to a fair determination of the case, the privilege must fall.

This Court in Offerdahl v. District Court (1971), 156 Mont. 432, 481 P.2d 338, quoted with approval the United States Supreme Court's balancing test that requires a balancing of the defendant's interest in preparing his

defense, and the government's interest in protecting the flow of informant information. The test requires the trial court to consider the circumstances of each case, the crime charged and any possible defenses, and the possible significance of the informant's testimony. In Offerdahl, the defendant was charged with selling drugs to "John Doe", an informant. Defendant's pre-trial motion to compel disclosure of informant's identity was denied. This Court held that the informant's identity must be disclosed because only the informant knew whether defendant was the one who made the drug sale or who received the marked money; the informant's testimony would determine the defendant's guilt or innocence of the crime of selling drugs.

We recently considered the question of disclosing an informant's identity in State v. Sykes (Mont. 1983), 663 P.2d 691, 40 St.Rep. 690, in which a search warrant was issued based on an unnamed informant's report that defendant had one-half pound of Columbian-type marijuana in his trailer home. In that case, this Court did not require disclosure of the informant's identity. Although we recognized the necessity of anonymous informants as part of police operations, Sykes does not apply here. In Sykes, claimant merely alleged that the evidence acquired by informant may have been obtained by an invasion of his privacy, and possibly violated his due process rights. But here, the informant played a continuous, active, and primary role in the alleged crime. However, the informant was not available as a witness because sometime after defendant's arrest, informant and his wife left town. Defendant does not know the whereabouts or the true identity of informant. Without the informant's testimony, the jury had only the testimony of

defendant and his wife to counter the testimony of undercover agent Adamo, and to establish the defense of entrapment.

We hold that in the interest of fundamental fairness, the informant's identity should have been disclosed. The informant's testimony is relevant to the issue of entrapment, and the balancing test, in this case, weighs heavily in defendant's favor.

To further establish his defense of entrapment, defendant wanted to present the testimony of William Worley and Diane Surman. Defendant claimed he would show through Worley's testimony that whenever informant was at defendant's house, the informant persisted in asking defendant to get drugs for him. Worley introduced the informant to defendant, and was informant's contact with the Butte drug scene. In addition, defendant argued he would show through Diane Surman's testimony that the informant's method of operation was to persist in his requests for drugs, and to wear down one's resistance to sell drugs. Diane Surman's husband was arrested on the same day as defendant for the sale of dangerous drugs to the undercover agent and the informant, based on a transaction that occurred one week earlier.

At trial, defendant attempted to prove through Worley's testimony that the informant continuously contacted and harassed defendant, asking for drugs. Long before trial, the State was notified that defendant was calling Worley as a witness. Defendant was unable to locate Worley until one week before trial, and Worley was promptly subpoenaed. The State had not questioned Worley, and wanted to do so before he testified. However, defense counsel indicated to the court he only briefly talked with Worley, and he knew Worley

would be an unfriendly witness who would not testify unless granted immunity.

Questioning was held outside the hearing of the jury to determine if immunity should be granted. While being questioned, Worley claimed his Fifth Amendment right against self-incrimination and refused to answer questions relating to his connection with the informant. Defendant requested immunity for Worley, pursuant to section 46-15-311, MCA, so Worley's testimony could be heard. Defendant explained that Worley would be admitting to possession, use and sale of dangerous drugs. Montana law provides that a person may be required to give testimony that may incriminate him, and if testimony is required, prosecution based on that testimony is barred. Section 46-15-311, MCA. The trial court, however, refused to grant immunity to Worley, and also ruled that Worley's testimony was irrelevant and immaterial.

Defendant twice attempted to use Diane Surman's testimony to prove that the informant methodically used persistent contact and harassing techniques to wear down one's resistance to sell drugs. First, at the pre-trial hearing, the court ruled that Diane Surman's testimony was immaterial and had no bearing on the contact between the informant and defendant. The court ruled that Diane Surman could not testify to the informant's methods of setting up drug buys.

At the trial, defendant again attempted to question Diane Surman to establish that informant's method of operation was to persist in his requests for drugs and to wear down one's resistance to sell drugs. The court again denied defendant the opportunity to question the witness, and

- 12 -

again ruled that her testimony was irrelevant and immaterial to defendant's defense of entrapment.

We believe the trial court should have permitted defendant to present evidence of informant's methods in setting up drug sales, even though the sales were with people other than defendant. We analogize to Rule 404, Mont.R.Evid., which, in certain circumstances, allows the State to introduce evidence of other crimes committed by a defendant to prove, among other things, plan, motive or intent of the defendant. The principle behind the rule must be equally available to a defendant who, as a part of his defense, seeks to show a plan or method of operation of the State's informant. The trial court, therefore, should have permitted defendant a chance to prove through the testimony of a witness, that the informant used harassing techniques as part of his method of operation in setting up drug buys. Fundamental fairness requires this result.

In summary, all excluded testimony was relevant and material to defendant's defense of entrapment. The informant's testimony would allegedly establish that defendant at first resisted but finally gave in to the informant's persistent and harassing techniques to set up a drug buy. William Worley's testimony is relevant to defendant's entrapment defense because Worley allegedly witnessed the contact between the informant and defendant for a five week period. Worley's testimony allegedly would show that defendant was subjected to persistent and harassing requests for drugs. Finally, Diane Surman's testimony allegedly would show that the informant used persistent and harassing contacts as his method to set up drug buys. Because Diane Surman personally experienced the informant's

methods, and witnessed the effect on her husband, her testimony then could corroborate the testimony of defendant and his wife. Based on the necessity for these witnesses, defendant was denied the right to present his entrapment defense. Defendant was clearly denied his right to present a full and meaningful defense.

For these reasons, the judgment of the District Court is vacated, and the case remanded for a new trial, consistent with the views expressed in this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

_____
Hon. Douglas G. Harkin,
District Judge,
sitting in place of
Mr. Justice Frank B. Morrison, Jr.