FILED

10/20/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 19-0143

DA 19-0143

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 265

STATE OF MONTANA,

  Plaintiff and Appellee,

 v.

MATTHEW THOMAS SOTO,

  Defendant and Appellant.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DC-18-163(A)
Honorable Amy Eddy, Presiding Judge

COUNSEL OF RECORD:

  For Appellant:

   Chad Wright, Appellate Defender, Gregory Hood, Assistant Appellate Defender, Helena, Montana

  For Appellee:

   Timothy C. Fox, Montana Attorney General, Mardell Ployhar, Assistant Attorney General, Helena, Montana

   Travis Ahner, Flathead County Attorney, Stacy Brown, Deputy County Attorney, Kalispell, Montana

      Submitted on Briefs: September 9, 2020

         Decided: October 20, 2020

Filed:

       _____
             Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    Defendant Matthew Thomas Soto appeals the January 9, 2019 Judgment and Sentence of the Eleventh Judicial District Court, Flathead County, following his felony conviction of Criminal Possession with Intent to Distribute, in violation of § 45-9-103(1), MCA.  We affirm.  We restate and address the following issue on appeal:

> *Did the District Court err in determining the State was not required to disclose the identity of its confidential informant?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶2    In January 2018, agents of the Northwest Drug Task Force began investigating Soto for selling illegal drugs.  The agents worked with a confidential informant, who performed a controlled purchase from Soto on February 5, 2018.  The confidential informant phoned Soto and arranged to buy .5 grams of methamphetamine.  The confidential informant, outfitted in an electronic transmitting device, met Soto to complete the transaction.  The confidential informant then met with law enforcement authorities at a designated meeting area and turned over the substance, which later tested positive for methamphetamine.

¶3    The State charged Soto with Criminal Distribution of Dangerous Drugs, a Felony, in violation of § 45-9-101(1), MCA.[1]  Soto moved to dismiss the case on the basis that the State had failed to disclose the confidential informant's identity within the discovery timeframe.

---

[1] Soto originally was charged with two counts, but the first count was dismissed without objection from the State.

2

¶4 During the hearing on Soto's motion, Agent Spanogle testified that he was present at the controlled buy between Soto and the confidential informant. Agent Spanogle said he provided the confidential informant $60 for the purpose of performing the controlled buy. Agent Spanogle estimated that he remained "[a]nywhere from one to two feet" from the transaction and could see the informant and Soto's interactions and hear their conversations. Agent Spanogle further estimated the transaction took "30 seconds to two minutes." Agent Spanogle stated he was available to testify at trial.

¶5 Agent McConnell also testified. Agent McConnell stated the confidential informant involved in the investigation had worked on two different cases with law enforcement and was currently involved in a pending investigation. Agent McConnell "believe[d]" there was a risk to the confidential informant should the informant's identity be revealed, because "any time anyone's name is made public or made known to that [drug] culture I believe like that person would feel like there's a threat or risk of possible harm there." When asked by the State's counsel if revealing the confidential informant's identity would hinder the informant's effectiveness in future investigations, Agent McConnell replied, "Yes." Agent McConnell further indicated he believed revealing the informant's identity would have an impact on the flow of information from other informants, stating,

> I believe it would. I think that's our job. Our main part of our job is using informants to try to disrupt the distribution of drugs in our community. Once it's known that informant[s'] names are just going to be provided I think people are going to be very reluctant to want to come work with the Drug Task Force.

3

¶6      After the agents testified, defense counsel argued that the confidential informant may have information relevant to Soto's defense, stating, "[I]t would be pure speculation at this point, but at a minimum . . . we do believe that there may be evidence or testimony potentially of entrapment . . . ."

¶7      Two days after the hearing, the District Court issued an order summarily denying Soto's motion to dismiss and declining to require disclosure of the confidential informant's identity. As the case was set for trial in two weeks, the District Court indicated it was issuing the abbreviated order "in the interest of timeliness" and would issue a full order prior to trial. Four days later, Soto agreed to plead guilty to an amended charge of criminal possession with intent to distribute, reserving his right to appeal the District Court's denial of his motion to dismiss.

## STANDARDS OF REVIEW

¶8      The denial of a motion to dismiss in a criminal case is a question of law that we review de novo for correctness. *State v. Christensen*, 2020 MT 237, ¶ 11, 401 Mont. 247, ___ P.3d ___. A district court's discretionary rulings, including whether to grant or deny discovery, are reviewed for an abuse of discretion. *State v. Walston*, 2020 MT 200, ¶ 11, 401 Mont. 15, 469 P.3d 716 (citing *State v. DuBray*, 2003 MT 255, ¶ 103, 317 Mont. 377, 77 P.3d 247). "[T]he test for abuse of discretion is whether the district court acted arbitrarily without conscientious judgment or exceeded the bounds of reason." *State v. Ayers*, 2003 MT 114, ¶ 26, 315 Mont. 395, 68 P.3d 768.

4

**DISCUSSION**

¶9     *Did the District Court err in determining the State was not required to disclose the identity of its confidential informant?*

¶10    The State is afforded a limited privilege to maintain the confidential identity of an informant. *Walston*, ¶ 14. We recently reaffirmed that the purpose of the confidential informant privilege is to protect "the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Walston*, ¶ 14 (quoting *Roviaro v. United States*, 353 U.S. 53, 59, 77 S. Ct. 623, 627 (1957)).

¶11    When applying the confidential informant privilege, Montana courts follow the balancing test articulated in *Roviaro*. The United States Supreme Court stated:

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Roviaro*, 353 U.S. at 62, 77 S. Ct. at 628-29. We reiterated in *Walston* that the confidential informant privilege requires a "balancing of the defendant's interest in preparing his defense and the government's interest in protecting the flow of informant information. The test requires the trial court to consider the circumstances of each case, the crime charged and any possible defenses, and the possible significance of the informant's testimony."

5

*Walston*, ¶ 15 (quoting *State v. Chapman*, 209 Mont. 57, 66, 679 P.2d 1210, 1215 (1984)) (original alterations omitted).

¶12 We observed in *Walston* that the confidential informant balancing test also derives from M. R. Evid. 502 and § 46-15-324(3), MCA. *See Walston*, ¶ 18. Under Rule 502(a), the State may "refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of a law." When the State invokes the confidential informant privilege and "it appears in the case that an informer may be able to give testimony relevant to any issue," the court shall provide the State "an opportunity to show facts relevant to determining whether the informer can, in fact, supply that testimony." M. R. Evid. 502(c)(2). If the court determines from the State's showing that the informant should be required to testify and the State maintains its refusal to disclose the informant's identity, "the court on motion of the defendant . . . shall dismiss the charges to which the testimony would relate . . . ." M. R. Evid. 502(c)(2).

¶13 Section 46-15-324(3), MCA, provides that revealing "the identity of an informant who will not be called to testify is not required if: (a) disclosure would result in substantial risk to the informant or to the informant's operational effectiveness; and (b) the failure to disclose will not infringe the constitutional rights of the accused."

¶14 The balancing test articulated in *Roviaro*, M. R. Evid. 502, and § 46-15-324(3), MCA, requires the defendant to "provide evidence to the court supporting the possible relevance of the informant's testimony to [his] defense." *Walston*, ¶ 18. In evaluating whether the identity of the informant is necessary for a defendant to prepare his

6

defense, we first consider "the extent to which the confidential informant participated in the criminal activity." *Walston*, ¶ 22 (quoting *United States v. Kerris*, 748 F.2d 610, 613-14 (11th Cir. 1984). The balance weighs heavily in favor of disclosure when an informant plays a "prominent" or "continuous, active and primary role in the alleged crime." *Walston*, ¶ 22 (quoting *Roviaro*, 353 U.S. at 64, 77 S. Ct. at 629; *Chapman*, 209 Mont. at 67, 679 P.2d at 1215). Conversely, disclosure is generally not warranted "when an informant's level of involvement in the criminal activity is that of minimal participation . . . ." *Walston*, ¶ 22 (quoting *Kerris*, 748 F.2d at 614) (original alterations omitted).

¶15 We also consider "the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant." *Walston*, ¶ 22 (quoting *Kerris*, 748 F.2d at 614). A defendant's "[m]ere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure." *Walston*, ¶ 22 (quoting *Kerris*, 748 F.2d at 614).

¶16 Soto faults the District Court's refusal to require disclosure of the confidential informant's identity for hampering his ability to prepare an entrapment defense. Soto asserts that disclosure would have allowed him more information about the informant's criminal history or possible motive for working against Soto.

¶17 Soto's arguments are speculative and do not present the same circumstances we found persuasive in *Walston*. We observed there that "the confidential informant was the only eyewitness to and an active participant in the drug sale itself. While the officers who testified could hear some of the interaction between the confidential informant and

7

Walston, they could not see what was happening[.]" *Walston*, ¶ 23. We also relied on the State's complete failure to demonstrate any risk, let alone a substantial risk, to the informant or to the informant's ongoing involvement with law enforcement. *Walston*, ¶ 25. Because the confidential informant no longer was working with law enforcement and had moved away from the area, we determined that revealing the informant's identity "would not affect her continuing operational effectiveness." *Walston*, ¶ 25. We also noted that the State offered no evidence that the confidential informant was subjected to any threatened or actual violence by Walston or his associates. *Walston*, ¶ 25.

¶18 Unlike in *Walston*, the confidential informant in this case was not the only eyewitness to the transaction with Soto, and the purchase occurred within view of law enforcement, dispelling any possibility of another person who could have provided the drugs the confidential informant purchased. The agent who supplied the confidential informant with the money to perform the controlled buy was within two feet of the transaction, was able to see and hear the transaction, and was available to offer testimony about the transaction at trial. Additionally, the confidential informant had a reliable history of working with the agents and was involved in a pending investigation in the area. There was substantial evidence that revealing this informant's identity would compromise the informant's ongoing relationship with the agents and willingness to continue providing information to law enforcement.

¶19 Citing *United States v. Sharp*, 778 F.2d 1182, 1187 (6th Cir. 1985), Soto asserts on appeal that *in camera* review of the confidential informant's identity would have allowed

8

him to access evidence necessary to prove his entrapment defense. The *Sharp* Court recognized that *in camera* interviews have "traditionally" been used "to assess the relevance and possible helpfulness of the informant's identity to the defense." *Sharp*, 778 F.2d at 1187. But the defendant still must meet his threshold burden of "adduc[ing] some evidence of entrapment before the government is called upon to disclose to the defendant identity of an informant . . . ." *Sharp*, 778 F.2d at 1187. *See also Kerris*, 748 F.2d at 614 ("An *in camera* hearing may be helpful in balancing the interests of the appellants against those of the government, but the precedent of this Court holds that an *in camera* hearing is not required whenever the identity of an informant is requested.").

¶20    Our review of the record reveals that Soto failed to articulate any facts supporting his theory of entrapment prior to requesting disclosure of the confidential informant's identity. In sum, Soto offered nothing beyond mere conjecture that he might have been able to argue entrapment, and the State's evidence showed risk to the informant's ongoing operational effectiveness. Although we agree that the District Court should have entered findings on its balancing of the relevant interests, Soto gave notice of his intent to plead guilty just a few days after the court denied his motion. Given the procedural disposition of the case, we decline to reverse the court for its summary ruling.

## CONCLUSION

¶21 The District Court did not abuse its discretion in denying disclosure of the confidential informant's identity, and it did not err as a matter of law in denying Soto's motion to dismiss. Soto's conviction is affirmed.

/S/ BETH BAKER

We Concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR