THE STATE OF MONTANA ex rel. RUSSELL JAMES OF-
FERDAHL, Relator, v. The DISTRICT COURT of the
EIGHTH JUDICIAL DISTRICT of the State of Montana
in and for the COUNTY OF CASCADE, and the HONOR-
ABLE TRUMAN G. BRADFORD, presiding judge, Respond-
ents.

No. 11985.
Submitted Dec. 15, 1971.
Decided Feb. 22, 1971.
481 P.2d 338.

Smith, Emmons & Baillie, Great Falls, Robert Emmons (argued), Great Falls, for relator.

Robert L. Woodahl, Atty. Gen., Helena, J. Fred Bourdeau, County Atty., Great Falls, Arthur G. Matteucci (argued), Great Falls, J. C. Weingartner, Asst. Atty. Gen., (argued), Helena, James R. Walsh, Great Falls, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

Original proceeding.

Relator, Russell James Offerdahl, petitioned this Court for an appropriate writ to compel the Cascade County District Court to direct the State of Montana to amend an information filed against him by inserting the true name of the person to whom certain dangerous drugs were sold. In order to determine whether or not an appropriate writ should issue we directed the respondent district court to show cause so we might have a full argument upon the issues raised.

It appears that on August 11, 1970, the Great Falls police department received information from two informers who described a sale of dangerous drugs that was to take place in Gibson Park. One of the informers named relator-defendant as one of the persons making the sale of drugs. As events transpired, a third informer told police that relator and one Brian Smith were threatening him, so he volunteered to purchase drugs from relator and Brian Smith in Gibson Park while under police surveillance.

On August 14, 1970, the relator and Smith picked up the third informer in Gibson Park while under observation by the police. After an estimated four minutes the third informer, together with relator and Smith, drove away from the park. The police met the third informer approximately forty-five minutes later, and the third informer gave the police 9 grams of a dangerous drug. However, the third informer did not

specifically tell the police who handed him the dangerous drug or to whom he gave the marked money. All the third informer said was that the sale was made in the car relator and Smith were driving in Gibson Park. Relator and Smith were arrested a short time later and money was found in relator's wallet with serial numbers which matched the serial numbers on the money the police had given the third informer to use in making the purchase.

On August 17, 1970, an information was filed and later amended charging relator with selling mescaline in violation of section 54-132, R.C.M.1947. Relator applied to this Court, as heretofore related, seeking a writ in connection with pretrial motions regarding the information which were denied in district court.

The thrust of the issues arising from the denied motions is whether or not relator is denied his right to equal protection of the law as guaranteed by the Fourteenth Amendment since section 54-131(k), R.C.M.1947, excepts from a criminal offense the "* * * transporting, possessing or using peyote (pellote) for religious sacramental purposes." And secondly, whether or not the prosecution must supply the name of the third informer on the information.

With regard to equal protection of the law guaranteed by the Fourteenth Amendment, it has been the basic principle of this state that a classification may be established which legally treats certain classes in different ways if the classification has a reasonable and substantial basis which is not arbitrary. State v. Safeway Stores, Inc., 106 Mont. 182, 191, 76 P.2d 81.

The Montana legislature enacted section 54-131(k), R.C.M. 1947, in 1969 in recognition of the use of peynote (pellote) by some religious organizations as an integral and necessary part of their religious expression. Other states have also condoned this use of peyote, and in particular, the Supreme Court of California has recently decided:

"We have weighed the competing values represented in this case on the symbolic scale of constitutionality. On the one side we have placed the weight of freedom of religion as protected by the First Amendment; on the other, the weight of the state's 'compelling interest.' Since the use of peyote incorporates the essence of the religious expression, the first weight is heavy. Yet the use of peyote presents only slight danger to the state and to the enforcement of its laws; the second weight is relatively light. The scale tips in favor of the constitutional protection." People v. Woody, 61 Cal.2d 716, 40 Cal.Rptr. 69, 77, 394 P.2d 813, 821.

■ This Court agrees with the succinct reasoning of the California Supreme Court and finds this classification reasonable and with substantial basis, therefore section 54-131(k), R.C.M.1947, is not in violation of the equal protection clause of the Fourteenth Amendment.

The relator demands the disclosure of the name of the third informer, and in support of his position, he cites Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639. Roviaro was charged with selling and transporting heroin. Before trial, Roviaro sought from the prosecution the identity of an informer who had taken a material part in bringing about Roviaro's possession of the heroin, but he was denied this knowledge by the lower courts. The United States Supreme Court ordered disclosure of the informer's identity and said:

"This is a case where the Government's informer was the sole participant, other than the accused, in the transaction charged. The informer was the only witness in a position to amplify or contradict the testimony of government witnesses. * * * We conclude that, under these circumstances, the trial court committed prejudicial error in permitting the Government to withhold the identity of its undercover employee in the face of repeated demands by the accused for his disclosure." Roviaro v. United States, supra, at 353 U.S. 64, 65, 77 St.Ct. 630.

To counter this, the prosecution maintains it is useless to cite the many cases interpreting the Roviaro case, but they do cite this language in McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62.

"In sum, the Court in the exercise of its power to formulate evidentiary rules for federal criminal cases has consistently declined to hold that an informer's identity need always be disclosed in a federal criminal trial, let alone in a preliminary hearing to determine probable cause for an arrest or search." McCray v. Illinois, supra at 386 U.S. 312, 87 S.Ct. 1063.

In the McCray case, the Supreme Court refused to compel an Illinois state court to require the disclosure of an informer's identity in a preliminary hearing to determine probable cause for a search.

To resolve the issue on the facts of the present case, this language in the Roviaro case is helpful:

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Roviaro v. United States, supra at 353 U.S. 62, 77 S.Ct. 628.

However, we note a series of cases coming out of several federal circuit courts of appeal which hold the failure to name a purchaser of narcotics in an indictment or information is not an essential element of a charge of unlawful sale of narcotics. Jackson v. United States, 8 Cir., 325 F.2d 477; Taylor v. United States, 8 Cir., 332 F.2d 918; Lewis v. United States, 8 Cir., 340 F.2d 678; Cain v. United States, 8 Cir., 349 F.2d 870; Clay v. United States, 10 Cir., 326 F.2d 196; Firo v. United States, 5 Cir., 340 F.2d 597; Borroto v. United States, 5 Cir., 338 F.2d 60.

In a case from the Ninth Circuit, a defendant was convicted on charges of violating 26 U.S.C. § 4704(a), sale of narcotic drugs not in or from a stamped package, and 26 U.S.C. § 4705(a), sale of narcotic drugs without a written order. Defendant appealed to the federal court of appeals on grounds the charging indictment failed to name the purchaser of the drug, but the federal appellate court did not find the indictment defective. In that case, Bush v. United States, 338 F.2d 400, 403, the Ninth Circuit distinguished the Roviaro case by a cite taken from a case decided by the Sixth Circuit:

" 'The courts are not unaware of the hazards attendant upon testimony of informants in narcotics cases. The United States Supreme Court in Roviaro v. United States, * * * held that failure to disclose the name of an informer at trial was reversible error because unfair to defendant under the circumstances of that case. But it also declined to say that the informer's identity need to be divulged in all cases, even at trial.' "

The Ninth Circuit court in *Bush* also cited a former case from its own jurisdiction where the name of a purchaser was undisclosed in a charging instrument with respect to a marijuana convicton as follows:

 " " 'The indictment alleged the offense substantially in the words of the statute, which sets forth all the essential elements of the crime; * * *. The indictment thus alleged an offense, and identified the particular conduct upon which the charge was based to the extent necessary to protect appellant from double jeopardy and to tell him what he must be prepared to meet. This was enough to satisfy constitutional standards.' "

The Ninth Circuit court in *Bush* found no difficulty in denying disclosure of a purchaser's name on a charging instrument in the face of 26 U.S.C. § 4705(a) which refers to a "person" to whom narcotic drugs are sold. However section 54-129(k),

R.C.M.1947, which defines "sell" as used in the Montana Dangerous Drug Act, refers to a sale or exchange to "another".

 For the reasons cited above, in most of the federal courts a purchaser's name need not be disclosed in a charging instrument if sufficient facts are stated to protect a defendant from double jeopardy when a violation of the federal narcotic laws are alleged. In the present case, even under the federal rulings, sufficient facts were not stated in the information to protect the defendant from double jeopardy.

The amended information filed November 4, 1970, charged relator with the "Sale of Dangerous Drugs" committed as follows:

"That at the County of Cascade, State of Montana, on or about the 14th day of August, A.D.1970, and before the filing of this Information, the said defendants then and there being, did then and there wilfully, wrongfully, unlawfully and feloniously sell certain dangerous drugs, to-wit: mescaline to John Doe, an informant, in violation of Section 54-132, R.C.M.1947 as amended."

This sketchy statement of charging facts does not meet the requirements of the form of charge as provided in section 95-1503, R.C.M.1947. In particular, subsections 3 and 4 of section 95-1503(c), demands an offense be charged by:

"(3) stating the facts constituting the offense in ordinary and concise language and such manner as to enable a person of common understanding to know what is intended;" and

"(4) stating the time and place of the offense as definitely as can be done * * *."

After analyzing the information charging the relator in the instant case, it is impossible for a "person of common understanding" to determine the time of the day when the alleged offense occurred, the vicinity where the alleged offense occurred, or other pertinent facts which would particularize this alleged offense to insure relator's protection from double jeopardy.

It appears to us that the only person who can establish the factual link of whether or not it was the relator or someone else who made the sale of the dangerous drugs is the third informer. He alone knows for certain, because police officers testified the third informer did not tell them who handed him the drugs, or to whom he gave the marked money, nor could the police view these specific actions by their observation of the parties in Gibson Park. Therefore, the "significance of the informer's testimony" is critical in proving the guilt or innocence of the defendant, thereby making the informer a vital material witness.

The importance of this evidentiary link and the fact the case has gone beyond the preliminary stage of establishing probable cause and is now on the verge of trial to determine guilt or innocence, necessitates the full disclosure of all material witnesses which may mean the conviction or acquital of the relator. Therefore, the identity of the third informer must be revealed unless there are sufficient facts stated in the information to protect the relator here from double jeopardy. As we have already noted, such is not the case, but certain additional facts do appear in the affidavit for leave to file information direct. Whether the information can be amended so as to disclose sufficient facts in accordance with what has been herein stated is a matter to be determined in the first instance by further proceedings in the district court and to facilitate such proceedings our stay order is vacated and annulled.

In view of what we have heretofore stated the district court is directed to quash its order.

Counsel fees will not be allowed in this proceeding unless the district court fails to quash its order.

MR. JUSTICES JOHN C. HARRISON, CASTLES, HAS-WELL and DALY, concur.