No. 88-524

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

STATE OF MONTANA,

        Plaintiff and Appellant,

-vs-

ANNETTE BABELLA,

        Defendant and Respondent.

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        Robert F.W. Smith, Asst. Atty. General, Helena
        Robert L. Deschamps, County Attorney; Craig Friedenauer,
        Deputy County Atty., Missoula, Montana

    For Respondent:

        J. Dirk Beccari, Public Defender, Missoula, Montana

Submitted on Briefs:  Jan. 26, 1989

Decided:  May 9, 1989

Filed:

_____
Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The District Court for the Fourth Judicial District, Missoula County, dismissed the charges against this defendant. The State appeals. We reverse.

The issue is:

Did the District Court err in granting defendant's motion which requested disclosure of the identity of confidential informants?

On October 3, 1987, Missoula law enforcement obtained a search warrant to search the home of Terry LaRoque. The application for the warrant was lengthy and contained information from several sources including Crimestoppers reports, anonymous phone calls, a participant in the drug sales, and information from confidential informants. The application recited specific instances in which reports given by informants and callers had been verified by law enforcement. Information obtained from the informants and other sources linked the sale of drugs to Terry LaRoque.

When the officers executed the search warrant at the home of Terry LaRouqe, Ms. Babella was found in bed with him. Drugs, various items of drug paraphernalia, and a large amount of cash, were found in the bedroom and in pants belonging to Ms. Babella. She was subsequently arrested.

On October 19, 1987, the State filed an information charging Ms. Babella with the offense of possession of dangerous drugs with the intent to sell, in violation of § 45-9-103(1), MCA. Ms. Babella plead not guilty on November 13, 1987. Later, the defendant moved for the disclosure of the State's confidential informants, and a hearing on this motion was held on June 17, 1988. At that hearing the State presented one witness, police officer Bill Wicks. He testified to facts which indicated that disclosure of identity

would produce a substantial risk of harm to the informants. The defendant produced no testimony. The court ordered both parties to brief the issue, and subsequently ordered the State to disclose the identity of the informants. When the State refused, the court ordered the charges against the defendant dismissed.

A governmental entity may claim the privilege to refuse to disclose the identity of its confidential informants. This privilege is not absolute but is subject to a balancing test enunciated in Roviaro v. United States (1957), 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639. In Roviaro the Court stated:

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

353 U.S. at 62.

Montana previously recognized this test in State ex rel. Offerdahl v. Dist. Ct. of Eighth Judicial Dist. (1971), 156 Mont. 432, 481 P.2d 338.

This privilege was codified in Montana in 1977 by the enactment of Rule 502 M.R.Evid, which states:

> (a) Rule of privilege. The United States or a state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of a law.
> (b) Who may claim the privilege. The privilege may be claimed by an appropriate representa-

3

tive of the public entity to which the information was furnished.

(c) Exceptions and limitations.

(1) Voluntary disclosure; informer a witness. No privilege exists under this rule if the identity of the informer or his interest in the subject matter of his communication has been disclosed to those who would have cause to resent the communication by a holder of the privilege or by the informer's own action, or if the informer appears as a witness for the public entity.

(2) Testimony on relevant issue. If it appears in the case that an informer may be able to give testimony relevant to any issue in a criminal case or to a fair determination of a material issue on the merits in a civil case to which a public entity is a party, and the public entity invokes the privilege, the court shall give the public entity an opportunity to show facts relevant to determining whether the informer can, in fact, supply that testimony.

If the Court finds that the informer should be required to give the testimony, and the public entity elects not to disclose his identity, the court on motion of the defendant in a criminal case shall dismiss the charges to which the testimony would relate, and the court may do so on its own motion. In civil cases, the court may make any order that justice requires.

The Commission Comments regarding this rule state, "The Commission believes this balances the interest of the public entity against a party's right to prepare his defense and to confront and examine his accuser."

In 1985, the Montana Legislature enacted § 46-15-324(3), MCA, which also addresses this privilege. That statute provides:

Disclosure of the existence of an informant or of the identity of an informant who will not be called to testify is not required if:

(a) disclosure would result in substantial risk to the informant or to his operational effectiveness; and

(b) the failure to disclose will not infringe the constitutional rights of the accused.

4

These rules reflect the policy of balancing the public's interest in protecting the flow of information to law enforcement, against the defendant's rights.

In the present case, the record is bare regarding the defendant's basis for making the motion for disclosure of the informants. Likewise, the order by the District Court gives no reason supporting its decision to order disclosure. In considering this issue on appeal, we have only the transcript from the hearing for our guidance. At the hearing, the defendant made no showing whatsoever which would establish a need for information about the confidential informants. We are therefore unable to determine why the court ordered disclosure.

In the present case the State contends that it met its burden by showing that disclosure would subject the informants to a substantial risk of harm. At the hearing on the motion to disclose the identity of the informants, Officer Wicks stated that Ms. Babella's boyfriend, Terry LaRoque, was connected with individuals in other states who were "in the habit of using violence for enforcement." The excerpt from the transcript states:

> Q. Do you have any feeling as to whether or not disclosure of these informants could result in a risk of harm to them?
> A. Yes, sir, I do.
> Q. What is the basis for your feeling?
> A. Our investigation has revealed that individuals connected with LaRoque in other states are in the habit of using violence for enforcement.
> In particular, one incident in Pasco, Washington, resulted in the death of four people by machine gun. These people have been directly tied into Mr. LaRoque by investigation.

Officer Wickes also testified to finding nine guns in the residence of Mr. LaRoque and Ms. Babella.

On cross-examination, defense counsel asked if Ms. Babella herself had made threats against the informants. The officer said, "Yes," and stated that after a discussion between Ms. Babella and law enforcement, Ms. Babella had reported the police activity to "some Mexicans in town" who told her in so many words that "they would handle the problem."

The testimony by Officer Wicks established that disclosure would result in substantial risk to the informants, and is clearly sufficient to invoke the privilege pursuant to § 46-15-324(3)(a), MCA.

Ms. Babella contends that in her case two exceptions may apply to this rule of privilege. She urges that nondisclosure may violate her constitutional rights pursuant to § 46-15-324(3)(b), MCA, or that the informant may be able to give "testimony relevant to any issue" pursuant to Rule 502(c)(2), M.R.Evid. However, Ms. Babella made absolutely no showing which would invoke either exception. After Officer Wicks testified that Ms. Babella had reported the police activity to "some Mexicans in town," defense counsel moved for "immediate disclosure of that information," stating, "It is obviously pertinent to Ms. Babella's case." This statement made by defense counsel constitutes the defendant's only attempt to show a need for disclosure. The information referred to did not even relate to her alleged offense. "Mere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure." State v. McLeod (1987), 740 P.2d 672, 675, 44 St.Rep. 1251, 1255 (citing United States v. Kerris (11th Cir. 1984), 748 F.2d 610, 614). As we stated in State v. Sykes (1983), 663 P.2d 691, 695, 40 St.Rep. 690, 693, "allowing

such a routine challenge as that presented by defendant would hamstring the effective operation of law enforcement agencies." Whereas the State met its burden, there was a total failure on the part of the defendant to demonstrate any need which would compel disclosure. The general assertion of a need for disclosure was wholly inadequate to satisfy the defendant's burden under the Roviaro test, or under either relevant statute.

Ms. Babella contends that the State must first disclose the relevance of the informants' testimony. She argues that only then can she know if her constitutional rights have been violated, and only then can the balancing test be made. This misconstrues the balancing test, and the requirements under the statutes. In this balancing test the burden is on the defendant to show the need for disclosure, and this need must be one which overrides the government's interest. Mere speculation will not suffice. United States v. Prueitt (9th Cir. 1976), 540 F.2d 995, 1003-04.

The District Court's order is vacated and this case is remanded for further proceedings.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

7

Mr. Justice John C. Sheehy, dissenting:


I dissent on two grounds, (1) the majority analysis of § 46-15-324(3), MCA, is incomplete, and (2) the testimony of the police officer regarding danger to the informants is vague and imprecise, as it relates to the defendant Annette Babella.

First the statute. It has two subsections (a) and (b) as set out in the majority opinion. The subsections are connected with the conjunction "and." To gain the nondisclosure of information, because of the conjunction, the State must show (1) substantial risk, and (2) the constitutional rights of the accused are not infringed. The majority opinion discusses the first prong but fails utterly to examine the infringement of Babella's constitutional rights, including the right to meet her accusers face-to-face, and the right to prepare a defense.

Second, the purported risk to the informers. The testimony of Officer Wicks speaks vaguely and arcanely of a "habit" based on one incident unconnected to Babella. He testified that she spoke of police activity to "some Mexicans in town" who told her "they would handle the problem." Nothing in those statements reflects any danger to hidden witnesses or informers, unless we assume that "Mexicans" as a class are dangerous, and that in "handling" the problem, the Mexicans meant violence. At most, the supposed danger is speculation, if the testimony is all the State has.

I would affirm the District Court.

_____
                              Justice

I concur in the dissent of Mr. Justice John C. Sheehy.

_____
                              Justice