DA 11-0030

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 120

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

CALE EUGENE HAUER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-2009-415
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Wade M. Zolynski, Chief Appellate Defender, Matthew M. Wilcox,
Assistant Appellate Defender, Helena, Montana

      For Appellee:

            Steve Bullock, Montana Attorney General, Matthew T. Cochenour,
Assistant Attorney General, Helena, Montana

            Fred R. Van Valkenburg, Missoula County Attorney, Kirsten Pabst
LaCroix, Deputy County Attorney, Missoula, Montana

Submitted on Briefs:  March 21, 2012

Decided:  June 1, 2012

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Cale Hauer appeals the Judgment of the District Court for the Fourth Judicial District, Missoula County, finding him guilty of the charges of unlawful restraint, assault with a weapon, partner or family member assault, and aggravated assault. We affirm.

¶2 Hauer raises the following issues on appeal:

¶3 1. Did the District Court err when it prohibited Hauer from testifying that the January altercation was caused by Hauer walking in on the victim purposely cutting herself?

¶4 2. Was Hauer prejudiced by ineffective assistance of counsel when counsel agreed not to introduce evidence of the victim's intentional cutting?

## Factual and Procedural Background

¶5 Hauer was charged by Information with two misdemeanor counts of Partner or Family Member Assault (PFMA) in violation of § 45-5-206, MCA; one misdemeanor count of Unlawful Restraint in violation of § 45-5-301, MCA; one felony count of Aggravated Assault in violation of § 45-5-202, MCA; one felony count of Assault with a Weapon in violation of § 45-5-213, MCA; one felony count of Tampering with a Witness in violation of § 45-7-206, MCA; and two felony counts of PFMA in violation of § 45-5-206, MCA. The charges stemmed from three separate arrests occurring in Missoula.

¶6 On January 13, 2009, Hauer was arrested after his girlfriend, Ulla Couture, reported that he assaulted her. Couture alleged that Hauer had strangled her, punched her

and pushed her down. Hauer was charged in City Court with one count of misdemeanor PFMA as a result.

¶7 Hauer was arrested for a second time on May 28, 2009, after Couture again reported that he assaulted her. This time Couture alleged that Hauer had pushed her over a couch resulting in a cut to Couture's arm. Hauer was charged in City Court with a second count of misdemeanor PFMA as a result.

¶8 Hauer was arrested for a third time on July 28, 2009, for three separate incidents that occurred in July. The first incident took place during the first week of July. Couture reported that, during an argument, Hauer had head-butted her in the face causing her nose to bleed and to bruise. Hauer was charged in the District Court with one count of felony PFMA as a result.

¶9 The second incident took place on July 9 when Couture went out for drinks with a girlfriend. Couture reported that Hauer showed up at the bar where she was drinking with her friend. Couture stated that Hauer was very angry and that he insisted Couture leave with him. On the walk back to Couture's house, Hauer threatened to kill her and forced her to walk down by the river. When they neared the river, Hauer pushed Couture down into some bushes and pulled out a knife. Hauer told Couture that she had a choice to have either her lips cut off or her asshole cut out. When Couture rolled over onto her stomach, Hauer called her a coward.

¶10 Couture further reported that Hauer then made Couture get up and they continued to walk along the river. At one point Hauer accidentally stepped on Couture's foot, but when he realized what he had done, he stomped on her foot again and told her that he

3

hoped her foot was broken. When the two arrived at Couture's home, Hauer forced Couture to drink several alcoholic drinks. Couture stated that Hauer repeatedly told her that she should either kill herself or stab him in the neck and kill him. Before leaving, Hauer had sex with Couture and told her that he owned her. Hauer was charged in the District Court with unlawful restraint, assault with a weapon, and an additional count of felony PFMA.

¶11 The third incident took place on July 27, 2009. Couture reported that, during an argument, Hauer had knocked her to the ground, gotten on top of her, and put his hands on her throat. She stated that Hauer pressed down on her neck for between 10 and 30 seconds and that she had difficulty breathing. Hauer was charged in the District Court with aggravated assault as a result of this incident.

¶12 In addition, Hauer was charged in the District Court with tampering with a witness. This charge stemmed from Couture's report that Hauer had been pressuring her to sign an affidavit recanting the earlier PFMA allegations. Hauer wanted her to state that she had gone off of her meds and that the prior PFMA reports were false.

¶13 At some point prior to trial, the January 13 and May 28 misdemeanor PFMA charges were transferred from City Court to the District Court and consolidated with the other six counts against Hauer. At the Omnibus Hearing on October 14, 2009, Hauer gave notice that he intended to rely on the defense of justifiable use of force. He later clarified that this defense pertained to the January 13 and May 28 misdemeanor PFMA charges as well as the aggravated assault charge stemming from the July 27 incident. He

maintained his innocence on the remaining charges. Hauer proceeded to trial before a jury on all eight counts.

¶14 At the final pre-trial conference, the prosecutor proposed an oral motion in limine seeking to exclude evidence of Couture being a "cutter" maintaining that such evidence was irrelevant and inappropriate character evidence. Hauer's trial counsel, Christopher Daly, did not oppose the State's motion stating that he did not intend to raise the issue. The court granted the State's motion.

¶15 After the jury trial began and the State had presented its case-in-chief, Daly asked the court for a discussion outside the presence of the jury. Daly informed the judge that Hauer intended to testify that the January incident occurred when Hauer caught Couture purposely cutting herself. Hauer claimed that Couture, angered by Hauer's intrusion, turned the knife on him and that he was acting in self-defense. The District Court refused to revisit the earlier motion in limine and prohibited Hauer from introducing evidence that Couture was a "cutter."

¶16 Hauer testified in his defense at trial claiming that he was the victim in the relationship, not Couture. Hauer testified that all of the injuries Couture sustained were the result of Hauer defending himself from her attacks. Regarding the January 13, 2009 incident, Hauer testified that Couture had run at him with a knife and tried to stab him. According to Hauer, he acted in self-defense by punching her three times in the arm and throwing her to the ground. He also claimed that many of the other incidents that Couture described never happened.

¶17 At the conclusion of the trial, Hauer was convicted on six of the eight counts. The jury entered a not guilty verdict on the charge of Tampering with a Witness. In addition, one of the July 2009 felony PFMA charges resulted in a hung jury, and the District Court declared a mistrial with respect to that count.

¶18 The District Court sentenced Hauer to six months in the Missoula County Detention Facility on the charge of Unlawful Restraint and six months each on the two charges of misdemeanor PFMA. The court also sentenced Hauer to five years in the Montana State Prison (MSP) on the charge of felony PFMA and twenty years each on the charges of felony Assault with a Weapon and felony Aggravated Assault.

¶19 Hauer now appeals his convictions and sentences.

**Issue 1.**

¶20 *Did the District Court err when it prohibited Hauer from testifying that the January altercation was caused by Hauer walking in on the victim purposely cutting herself?*

¶21 Hauer points out that a criminal defendant has a constitutionally protected due process right to present a defense. He contends that he was denied that right in this case when the District Court barred him from testifying "as to the full course of events" occurring on January 13, 2009. Hauer claims that he intended to testify that the January altercation was sparked by Hauer walking in on Couture intentionally cutting herself with a knife. He maintains that the District Court unlawfully prohibited him from offering that testimony.

¶22 The State argues that the District Court's ruling to prohibit testimony regarding Couture cutting herself did not violate Hauer's constitutional right to present a defense.

6

The State maintains that contrary to Hauer's contentions, he was permitted to introduce extensive testimony, including expert testimony, in support of his justifiable-use-of-force defense.

¶23 "Whether a defendant's right to due process has been violated is a question of constitutional law over which this Court exercises plenary review." *State v. Schaff*, 2011 MT 19, ¶ 7, 359 Mont. 185, 247 P.3d 727 (citing *State v. Lally*, 2008 MT 452, ¶ 13, 348 Mont. 59, 199 P.3d 818).

¶24 Defendants have a constitutional right to present a defense. Whether that right is "rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S. Ct. 1727, 1731 (2006) (internal quotation marks omitted). However, this right is not absolute. The United States Supreme Court has established that state rules excluding evidence from criminal trials do not abridge a defendant's right to present a defense so long as the rule is not arbitrary or disproportionate to the purpose it is designed to serve. *State v. Ahto*, 1998 MT 200, ¶ 16, 290 Mont. 338, 965 P.2d 240 (citing *State v. Johnson*, 1998 MT 107, ¶ 22, 288 Mont. 513, 958 P.2d 1182; *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 1264 (1998)).

¶25 Furthermore, defendants do not have an unlimited right to introduce evidence that is inadmissible under standard rules of evidence. *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S. Ct. 646, 653 (1988). What's more, "[s]peculative or unsupported allegations are

7

insufficient to tip the scales in favor of a defendant's right to present a defense . . . ." *Ahto*, ¶ 17.

¶26     In the instant case, Hauer asserted a justifiable-use-of-force defense under § 45-3-102, MCA, which provides:

> **Use of force in defense of person.**  A person is justified in the use of force or threat to use force against another when and to the extent that the person reasonably believes that the conduct is necessary for self-defense or the defense of another against the other person's imminent use of unlawful force.  However, the person is justified in the use of force likely to cause death or serious bodily harm only if the person reasonably believes that the force is necessary to prevent imminent death or serious bodily harm to the person or another or to prevent the commission of a forcible felony.

¶27     However, the State maintained that the "cutting" evidence that Hauer sought to introduce in his defense was inadmissible under the rules of evidence relating to character evidence of the victim.  A defendant who asserts a justifiable-use-of-force defense may offer the victim's character evidence only in limited circumstances.  First, the character evidence must be "a pertinent trait of character of the victim . . . ."  M. R. Evid. 404(a)(2).  Second, specific instances of conduct may be admitted only in "cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, or where the character of the victim relates to the reasonableness of force used by the accused in self defense . . . ."  M. R. Evid. 405.  Evidence of a victim's violent character is not an "essential element" of a justifiable-use-of-force defense.  *Deschon v. State*, 2008 MT 380, ¶ 24, 347 Mont. 30, 197 P.3d 476.

¶28     Character evidence is evidence regarding someone's personality traits or evidence of a person's moral standing in a community based on reputation or opinion.  *Black's*

8

*Law Dictionary* 576 (Bryan A. Gardner ed., 7th ed., West 1999) (citing Fed. R. Evid. 404, 405 and 608). A person who self-harms by "cutting" is presently thought to be suffering from a symptom of a borderline personality disorder, *Diagnostic and Statistical Manual of Mental Disorders: DSM-IV* 650-54 (4th ed. 1994 American Psychiatric Association)—although there is some movement in the medical community to upgrade this affliction to a mental or psychiatric disorder in its own right, Kathleen Masterson, " *'Cutting' Elevated from Symptom to Mental Disorder*," http://www.npr.org/templates/story/story.php?storyId=123529829 (accessed May 16, 2012); *Cornell Research Program on Self Injurious Behavior in Adolescents and Young Adults*, http://www.crpsib.com/whatissi.asp (accessed May 16, 2012).

¶29 Accordingly, we conclude that the trial court made the correct decision in characterizing Couture's "cutting" as "character evidence"—at least based on the present medical definition of this affliction. The point is that however one characterizes Couture's "cutting," under the facts here—as admitted by Hauer—her act of "cutting" herself was not admissible under M. R. Evid. 404(a)(1), or (c).[1] Moreover, Couture's

---

[1] M. R. Evid. 404 provides in pertinent part:

> (a) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
> (1) Character of accused. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same.

.    .    .

"cutting" herself was not relevant under M. R. Evid 401[2] to Hauer's justifiable-use-of-force defense, and this evidence was, therefore, inadmissible under M. R. Evid 402.[3]

¶30　The relevance of Couture's cutting to Hauer's defense was only that she allegedly had in her possession the knife that she raised and used to try to assault him as he entered the room. Under the facts of this case, the *reason* Couture had the knife in her possession was not relevant. She could have been cutting herself or slicing a salami. Furthermore, under the circumstances of this case, even if relevant as character evidence, *arguendo*, Couture's cutting herself was properly excludable because its probative value was substantially outweighed by the danger of this evidence confusing and misleading the jury. M. R. Evid 403.[4] The focus of Hauer's justifiable-use-of-force defense was his

---

(c) Character in issue. Evidence of a person's character or a trait of character is admissible in cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense.

[2] M. R. Evid. 401 provides:

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Relevant evidence may include evidence bearing upon the credibility of a witness or hearsay declarant.

[3] M. R. Evid. 402 provides:

All relevant evidence is admissible, except as otherwise provided by constitution, statute, these rules, or other rules applicable in the courts of this state. Evidence which is not relevant is not admissible.

[4] M. R. Evid 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of

allegation that as he entered the room, Couture came at him with an upraised knife intending to assault and harm him. He then had to physically assault Couture to protect and defend himself from her attack. *Why* she had the knife in her hand simply did not matter under these facts. Hauer's attempt to use this evidence was, rather, to show that Couture was acting in conformity with her character, in violation of M. R. Evid 404(a)(2)—which makes no sense, in any event, since "cutters" harm themselves, not others. If Hauer had argued that he had to use force to prevent Couture from cutting herself, then evidence that Couture was a "cutter" may have been relevant, but that is not how the evidence was presented here.

¶31 Moreover, the District Court's ruling did not prevent Hauer from presenting his justifiable-use-of-force defense. At trial, Hauer testified that he was the victim in the relationship, that he was terrified of Couture, and that she had hurt him both emotionally and physically. Hauer further testified that he physically had to defend himself against Couture to keep from being harmed and that all the bruises he inflicted on Couture resulted from Hauer defending himself.

¶32 As the State points out in its brief on appeal, Hauer's claim that the District Court's ruling limited him to testifying that "Ms. Couture had a knife in her hand and that she ran at him with it" understates his actual testimony. Hauer testified that Couture "ran at me with [the knife] in her right hand and lifted it up and came down at me and tried to

---

the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

11

stab me with it . . . ." We agree with the State's argument that this testimony would have supported a justifiable-use-of-force defense had the jury believed Hauer.

¶33 Hauer also contends that "this was an extremely close call for the jury" and that "[i]n a case where the scales were so evenly balanced, there is—at the very least—a reasonable probability that Mr. Hauer's full self-defense testimony would have tipped the scales in his favor and led to a full acquittal." Hauer further contends that the appropriate remedy in this case is a new trial on all of the charges because "additional evidence showing that Ms. Couture was the aggressor in the January incident may have altered the jury's assessment of credibility with respect to the subsequent altercations."

¶34 These contentions are pure speculation on Hauer's part. There is nothing in the record indicating that this was a "close call" for the jury or that the scales were "evenly balanced." The jury convicted Hauer of six counts, three of which involved Hauer's self-defense claims. The jury heard all of the relevant testimony regarding justifiable use of force and ruled against Hauer. Admitting evidence that Couture was cutting herself would have added nothing to the defense. Consequently, we conclude that the District Court's ruling did not unconstitutionally abridge Hauer's right to present a defense.

¶35 Accordingly, we hold that the District Court did not err when it prohibited Hauer from testifying that the January altercation was caused by Hauer walking in on Couture purposely cutting herself.

### Issue 2.

¶36 *Was Hauer prejudiced by ineffective assistance of counsel when counsel agreed not to introduce evidence of the victim's intentional cutting?*

12

¶37     Hauer contends on appeal that his trial counsel failed to investigate Hauer's version of events and wrongly agreed not to introduce evidence that Couture was cutting herself. Hauer maintains that counsel made this agreement without discussing it with him. Hauer states that when counsel realized his mistake, the judge declined to reopen the issue and left the prohibition on that evidence. Hauer argues that as a direct result of counsel's failure, the jury was presented with a self-defense argument considerably weaker than the one Hauer intended to present. He asserts that there is a reasonable likelihood that but for counsel's deficient performance, Hauer's self-defense argument would have been successful.

¶38     The State argues that Hauer's counsel was not ineffective for failing to present evidence that Couture was cutting herself because, under the rules of evidence, the testimony that Hauer wanted to give was inadmissible. The State asserts that even if counsel had objected to the State's motion to preclude such evidence, the District Court would have overruled that objection under the rules governing character evidence. The State notes that it is well settled in Montana that counsel cannot be considered ineffective for failing to make a meritless objection.

¶39     The right to counsel in criminal prosecutions is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Article II, Section 24 of the Montana Constitution. Claims of ineffective assistance of counsel present mixed questions of law and fact which this Court reviews de novo. *Heddings v. State*, 2011 MT 228, ¶ 12, 362 Mont. 90, 265 P.3d 600 (citing *Becker v. State*, 2010 MT 93, ¶ 8, 356

Mont. 161, 232 P.3d 376; *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861).

¶40    We evaluate ineffective assistance of counsel claims under the following two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984):  (1) whether counsel's performance was deficient, and (2) whether counsel's deficient performance prejudiced the defense.  To prevail on an ineffective assistance of counsel claim, a defendant must satisfy both prongs of this test.  *Whitlow*, ¶ 11 (citing *Adams v. State*, 2007 MT 35, ¶ 22, 336 Mont. 63, 153 P.3d 601).  If a defendant makes an insufficient showing on one prong of the test, then there is no need to address the other prong.  *Whitlow*, ¶ 11.

¶41    To establish that counsel rendered ineffective assistance, a defendant must overcome the strong presumption that counsel performed "within the wide range of reasonable professional assistance."  *Whitlow*, ¶ 21 (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065).  And, to overcome this presumption, a defendant must demonstrate that counsel's conduct "fell below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances."  *Whitlow*, ¶ 20.

¶42    In addition, we have determined that ineffective assistance of counsel claims can be reviewed on direct appeal only if they are capable of resolution based solely on the record.  *State v. Howard*, 2011 MT 246, ¶ 21, 362 Mont. 196, 265 P.3d 606 (citing *In re Petition of Hans*, 1998 MT 7, ¶ 41, 288 Mont. 168, 958 P.2d 1175).  We make this

determination by questioning "why" counsel did or did not perform the challenged action. *Howard*, ¶ 21.

¶43     In this case, we conclude that Hauer's ineffective assistance of counsel claim is capable of resolution based solely on the record, thus we review it on direct appeal.

¶44     Hauer claims that counsel performed below the range of competence demanded when counsel stipulated to the State's motion to preclude evidence that Couture was cutting herself.  Hauer asserts in his brief on appeal that "[o]ne of the seemingly easiest and most [obvious] ways to begin an investigation into a client's case would be to ask your client for his or her version of the events."  According to Hauer, counsel's stipulation shows that counsel was not aware of Hauer's version of the January assault.

¶45     On the contrary, the record establishes that counsel diligently pursued Hauer's justifiable-use-of-force theory from the beginning.  Soon after taking over Hauer's defense, counsel subpoenaed witnesses whom Hauer claimed could "exculpate" him.  According to Hauer, these witnesses would testify that Couture had assaulted Hauer, that Couture made false statements to the municipal court, and that she violated that court's "no-contact orders."  At trial, counsel questioned these witnesses in a manner consistent with Hauer's defense theory.  In addition, defense counsel cross-examined Couture about inconsistencies in her statements and about a false statement she had made to the municipal court.  Counsel also hired an expert witness who testified that the marks on Couture's neck were not made by Hauer.

¶46     While the record here clearly establishes that counsel diligently pursued Hauer's justifiable-use-of-force defense throughout counsel's representation of Hauer, the record

15

also establishes that Hauer's version of events continued to evolve throughout these proceedings. The transcript of the final pretrial conference indicates that Hauer was present when counsel informed the court that the defense had no plans to introduce evidence that Couture was a "cutter." Even though Hauer was present, he did not attempt to contradict counsel's statement or inform counsel or the court that counsel was mistaken. In addition, Hauer originally planned to rely on self-defense for the July 27 incident, but, when it came time for Hauer to testify, he claimed that the incident never happened—that he did not have any contact with Couture after July 19. However, on cross-examination, he changed once again and claimed that the July 27 incident occurred because Couture had been abusive toward him and that he "snapped."

¶47 Even if counsel had not been diligent in presenting Hauer's justifiable-use-of-force defense, the testimony Hauer sought to introduce regarding Couture cutting herself was improper character evidence of the victim and would not have been admissible under the rules of evidence in any event. Counsel cannot be considered ineffective for failing to make a meritless objection. On the contrary, it is well settled that counsel's "failure to object does not constitute ineffective assistance when the objection lacks merit and properly would have been overruled." *Howard*, ¶ 26.

¶48 Hauer has failed to meet his burden to show that counsel's performance "fell below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances." *Whitlow*, ¶ 20. Because Hauer made an insufficient showing on this first prong of the *Strickland* test, we do not address the second prong.

16

¶49    Accordingly, we hold that counsel did not render ineffective assistance when he agreed not to introduce evidence of the victim's intentional cutting.

¶50    Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS

Justice Jim Rice, concurring.

¶51    I concur with the Court's decision. I don't agree that evidence of cutting is necessarily, as a matter of law, character evidence admissible only as permitted under M. R. Evid. 404, or that it is irrelevant as a matter of law to the charge of assault, as the Court indicates in ¶ 30 ("Under the facts of this case, the *reason* Couture had the knife in her possession was not relevant. She could have been cutting herself or slicing a salami."). Hauer makes no showing of the particular relevance to his defense of the cutting evidence, or of his surprise discovery of this activity. He offers generally that the circumstances surrounding the incident must be examined, and offers the speculative assertion that "Ms. Couture using the knife to harm herself clearly suggests that she was willing to use the knife as a weapon." Without a more definitive connection, however, I believe the evidence, though relevant, was well excludable as substantially outweighed

by the danger of confusing and misleading the jury under M. R. Evid. 403, even if Hauer had given the District Court a timely opportunity to consider it.


/S/ JIM RICE