FILED

08/11/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0501

DA 18-0501

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 200

STATE OF MONTANA,

Plaintiff and Appellee,

v.

SHAWN MARIE WALSTON,

Defendant and Appellant.

APPEAL FROM:   District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DC 16-64
Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender, James Reavis, Assistant Appellate Defender, Helena, Montana

For Appellee:

Timothy C. Fox, Montana Attorney General, Mardell L. Ployhar, Assistant Attorney General, Helena, Montana

Kendra K. Lassiter, Park County Attorney, Livingston, Montana

Submitted on Briefs:  June 24, 2020

Decided:  August 11, 2020

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1    Shawn Marie Walston appeals from the August 7, 2017 Order Denying Motion for Disclosure of Confidential Informant and Alternative Motion to Dismiss issued by the Sixth Judicial District Court, Park County.  After the District Court's denial of her pretrial motion, a Park County jury convicted Walston of criminal distribution of dangerous drugs, methamphetamine, in violation of § 45-9-101, MCA, and criminal possession of dangerous drugs, methamphetamine, in violation of § 45-9-102, MCA.  We restate the issue on appeal as follows:

> *Whether the District Court erred in denying Walston's motion to disclose the identity of a confidential informant.*

¶2    We reverse and remand for further proceedings consistent with this Opinion.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3    In March 2016, a confidential informant told Detective Tim Barnes of the Missouri River Drug Task Force that Walston was selling methamphetamine in the area. The informant had previously provided useful information to the Task Force.  Detective Barnes corroborated the information from the confidential informant with other sources and applied for a search warrant to use a body wire to record a controlled buy between the confidential informant and Walston, which was granted.

¶4    On March 10, 2016, Detective Barnes supervised a surveillance team of five officers to oversee the controlled buy.  Before the buy, officers searched the confidential informant's person and vehicle to make sure she did not have access to money or drugs. After this preliminary search, Detective Barnes put a body wire on the confidential

informant, which could record audio, and provided the confidential informant with $325 to purchase methamphetamine from Walston. Two detectives followed the informant in a separate car to the trailer park where Walston lived. Three other officers were already stationed in two vehicles at the trailer park. Only two of the five officers in the surveillance team could see Walston's trailer from their places in the vehicles, but all five officers could hear the transmission from the confidential informant's body wire over their radios.

¶5 The confidential informant first met Walston outside her trailer. After a short conversation between the two women outside, the women went inside the trailer. One officer witnessed them enter the trailer, but none of the officers could see inside the trailer. The transcript produced by the State during discovery, but not entered into evidence at trial, shows conversation relating to the weight and method of ingestion of methamphetamine.

¶6 Upon leaving Walston's trailer, the confidential informant drove about eight miles to a predetermined meeting location. She provided officers with a small plastic bag containing a crystalline substance that field tested positive for methamphetamine. Officers again searched the informant's person and vehicle and did not recover any additional contraband or money.

¶7 The State charged Walston with one count of criminal distribution of dangerous drugs, methamphetamine, in violation of § 45-9-101, MCA, and criminal possession of dangerous drugs, methamphetamine, in violation of § 45-9-102, MCA. In response to Walston's discovery requests, the State declined to reveal the identity of the confidential informant who participated in the controlled buy. Walston filed a motion asking the

3

District Court to compel the State to disclose the informant's identity or to dismiss the case. After laying out the facts alleged by the State in its information that showed the informant was actively involved in the charged criminal activity, Walston argued:

> [T]here is no doubt that the [informant] is able to []give testimony relevant to the substance of the charges in this case (a material issue) based upon the facts set forth herein. Since the [informant's] testimony is material and may in fact provide exculpatory evidence, the State has a duty to disclose her identity pursuant to both § 46-15-322(2)(c) and Rule 502.

The State responded it was relying on its privilege to decline to provide the identity of the informant. Because the informant was not going to testify at trial, the State maintained, the burden was on Walston to demonstrate a need for the disclosure beyond mere speculation the testimony of the informant would be relevant.

¶8 At the hearing on the motion, Walston's argument focused on whether the officers would be able to identify her as the source of the drugs found on the confidential informant's person upon leaving the trailer court. The State provided testimony from Detective Barnes to counter this. Barnes explained officers had been given a photograph of Walston before the operation and the officers in view of the trailer could positively identify Walston as the woman who spoke with the confidential informant outside the trailer. Barnes answered affirmatively when asked whether disclosing the identity of the informant would "compromise the informant's safety." This was the only evidence regarding the informant's safety presented to the District Court. Walston maintained at the hearing the informant would be able to give testimony relevant to the substance of the charges, arguing she was entitled "to cross-examine and confront the confidential

4

informant as to who exactly was present in the residence, what exactly occurred, and whether or not it was, in fact, Ms. Walston that participated in this deal." The District Court denied Walston's motion.

¶9 The jury at Walston's first trial was unable to reach a verdict. Ten jurors voted to convict, while two voted to acquit. A second trial was held March 20, 2018.

¶10 At the second trial, all five officers testified about their roles and observations during the controlled buy. Detective Barnes testified he heard conversation between the two women "consistent with a drug transaction." On cross-examination, Walston's counsel elicited testimony from the officers that the audio quality of the body wire's transmission was poor and scratchy and only parts of the conversation between the confidential informant and Walston were intelligible. The transcription shows over 120 portions of the audio recording are unintelligible. Detective Barnes also testified the confidential informant had moved out of the area and no longer worked for the Task Force. The jury convicted Walston of both counts.

## STANDARD OF REVIEW

¶11 We review orders granting or denying discovery for an abuse of discretion. *State v. DuBray*, 2003 MT 255, ¶ 103, 317 Mont. 377, 77 P.3d 247. The question whether a defendant's right to due process has been violated is a constitutional question over which this Court exercises plenary review. *State v. Hauer*, 2012 MT 120, ¶ 23, 365 Mont. 184, 279 P.3d 149.

5

**DISCUSSION**

¶12 The District Court provided three grounds for its denial of Walston's motion to compel disclosure of the confidential informant. First, the court explained "[p]ursuant to Rule 502 of the Montana Rules of Evidence the State may refuse to disclose the identity of an informant if the informant is not going to testify." Second, the court determined disclosure was not required if disclosure would result in substantial risk to the informant and Detective Barnes testified affirmatively when asked whether the informant's safety would be compromised. Finally, the court explained mere speculation about the possible relevance of the informant's testimony is insufficient to warrant disclosure of the informant's identity. It determined Walston failed to provide anything concrete or substantive to establish "that disclosure is necessary to properly prepare for trial, that the informant might possess exculpatory information, or that the informant may have been involved in the crime."

¶13 Walston appeals, arguing she had the right to know the identity of the informant because the informant played a continuous, active, and primary role in the alleged crime. The State counters Walston failed to meet her burden of showing her need for disclosure was sufficient to override the government's interest in protecting the identity of the informant, but rather provided only speculation and conjecture the informant would provide relevant testimony.

¶14 The State has the privilege to refuse to disclose the name of an informant under certain circumstances. "The purpose of the privilege is the furtherance and protection of

6

the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Roviaro v. United States*, 353 U.S. 53, 59, 77 S. Ct. 623, 627 (1957). The privilege has limits, however: "Where the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro*, 353 U.S. at 60-61, 77 S. Ct. at 628.

¶15 The enactment of M. R. Evid. 502 in 1977 codified this privilege in Montana. Rule 502 incorporated the balancing test from *Roviaro* this Court had previously adopted in *State ex rel. Offerdahl v. District Court of the Eighth Judicial District*, 156 Mont. 432, 481 P.2d 338 (1971). *See* M. R. Evid. 502, cmt. c. Whether the State may rely on its privilege to keep the confidential informant's identity confidential requires "balancing of the defendant's interest in preparing his defense[] and the government's interest in protecting the flow of informant information. The test requires the trial court to consider the circumstances of each case, the crime charged and any possible defenses, and the possible significance of the informant's testimony." *State v. Chapman*, 209 Mont. 57, 66, 679 P.2d 1210, 1215 (1984).

¶16 Rule 502 allows the State "to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of a law." But

7

[i]f it appears in the case that an informer may be able to give testimony *relevant to any issue in a criminal case . . .* and the public entity invokes the privilege, the court shall give the public entity an opportunity to show facts relevant to determining whether the informer can, in fact, supply that testimony. If the Court finds that the informer should be required to give the testimony, and the public entity elects not to disclose the informer's identity, the court . . . shall dismiss the charges to which the testimony would relate."

Rule 502(c)(2) (emphasis added).

¶17 The Montana Legislature provided further guidance about when the State can withhold the identity of an informer with its 1985 enactment of § 46-15-324(3), MCA. That statute provides the State is not required to disclose the identity of an informant the State is not calling to testify if "disclosure would result in substantial risk to the informant or the informant's operational effectiveness" and "the failure to disclose will not infringe the constitutional rights of the accused." Section 46-15-324(3), MCA.

¶18 The balancing test articulated in *Roviaro*, Rule 502, and § 46-15-324(3), MCA, together inform the analysis to determine when the State must disclose the identity of a confidential informant. Under this analysis, a defendant must provide evidence to the court supporting the possible relevance of the informant's testimony to her defense. *See State v. Babella*, 237 Mont. 311, 316, 772 P.2d 875, 878 (1989). The factors to consider include "the circumstances of each case, the crime charged and any possible defenses, and the possible significance of the informant's testimony." *Chapman*, 209 Mont. at 66, 679 P.2d at 1215.

¶19 In *Roviaro*, four law enforcement officers arranged a controlled buy between a confidential informant and the defendant. One officer was in the trunk of the informant's

8

vehicle and could hear the conversation inside the vehicle. The other officers tailed the informant's vehicle. The confidential informant picked up the defendant and the defendant directed him to drive to a specific location. Once there, the officers witnessed the defendant get out of the vehicle, pick up a small package, place it in the informant's car and then walk away. An officer immediately went to the informant's vehicle and retrieved a small package containing three envelopes of heroin. The officer in the trunk testified at trial he heard the defendant give the informant directions to the spot where the package was picked up and heard the defendant say he brought the informant "three pieces this time." *Roviaro*, 353 U.S. at 57, 77 S. Ct. at 626. The government refused to disclose the identity of the informant and the informant did not testify at trial. The United States Supreme Court reversed the defendant's conviction. After laying out the balancing test to determine when an informant's identity must be disclosed, the Supreme Court explained the informant's testimony

> was highly relevant and might have been helpful to the defense. So far as [the defendant] knew, he and [the informant] were alone and unobserved during the crucial occurrence for which he was indicted. Unless [the defendant] waived his constitutional right not to take the stand in his own defense, [the informant] was his one material witness.

*Roviaro*, 353 U.S. at 63-64, 77 S. Ct. at 629. The Court went on to explain the opportunity to cross-examine the officers "was hardly a substitute for an opportunity to examine the man who had been nearest to him and took part in the transaction." *Roviaro*, 353 U.S. at 64, 77 S. Ct. at 629.

9

¶20    In *Chapman*, this Court applied *Roviaro* and summarized its holding: "The United States Supreme Court held that when, in the interests of fundamental fairness, disclosure of an informant's identity is relevant and helpful to the defendant's defense, or essential to a fair determination of the case, the privilege must fall." *Chapman*, 209 Mont. at 66, 679 P.2d at 1215. We explained when "the informant played a continuous, active and primary role in the alleged crime," an informant's identity is relevant and potentially helpful to the defendant's defense and essential to a fair determination of the case. *Chapman*, 209 Mont. at 66-67, 679 P.2d at 1215. We held the informant in *Chapman* played such a primary role through his extensive and repeated involvement in setting up the sale and his presence and involvement at the time of the sale of drugs to an undercover agent, and the district court erred in not compelling the State to disclose the informant's identity.

¶21    On the other hand, this Court has declined to compel the disclosure of an informant's identity in circumstances when the informant did not play a continuous, active, and primary role in the alleged crime. In *State v. McLeod*, the defendant sought the identity of an informant who arranged a drug sale between the defendant and an undercover agent. While present at the sale, the record did not show the informant played an active or primary role in the transaction. The defendant argued he needed the testimony of the informant to support an entrapment defense. We held "[m]ere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure. . . . The defendant must show the informant's testimony would significantly aid

10

in establishing an asserted defense." *State v. McLeod*, 227 Mont. 482, 487, 740 P.2d 672, 675 (1987) (quoting *United States v. Kerris*, 748 F.2d 610, 614 (11th Cir. 1984)) (alterations in original). This Court held the defendant did not meet his burden of showing the informant would be a material witness in supporting an entrapment defense and failure to disclose the identity of the informant did not infringe on the defendant's constitutional rights. *McLeod*, 227 Mont. at 488, 740 P.2d at 675.

¶22 In the *Kerris* decision we relied on in *McLeod*, the Eleventh Circuit explained there are two primary factors in weighing whether the identity of an informant is necessary for a defendant to prepare his defense. The first is "the extent to which the confidential informant participated in the criminal activity." *Kerris*, 748 F.2d at 613-14. When the informant plays a "prominent part" in the criminal activity, *Roviaro*, 353 U.S. at 64, 77 S. Ct. at 629, or "a continuous, active and primary role in the alleged crime," *Chapman*, 209 Mont. at 67, 679 P.2d at 1215, the balance weighs heavily in favor of disclosure, *Chapman*, 209 Mont. at 67, 679 P.2d at 1216. In contrast, "[w]hen an informant's level of involvement in the criminal activity is that of minimal participation, this factor by itself will not compel disclosure." *Kerris*, 748 F.2d at 614 (internal quotation omitted). The second factor "is the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant. Mere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure." *Kerris*, 748 F.2d at 614. *McLeod* and its progeny relied on this second factor to hold defendants had failed to meet their burdens to demonstrate the informants'

11

testimonies were relevant to their asserted defenses. *See, e.g., DuBray*, ¶ 113; *State v. Ayers*, 2003 MT 114, ¶¶ 55, 59, 315 Mont. 395, 68 P.3d 768; *State v. Coates*, 233 Mont. 303, 306-07, 759 P.2d 999, 1002 (1988); *Babella*, 237 Mont. at 315-16, 772 P.2d at 878.

¶23 The State rightly does not attempt to defend the District Court's determination Walston's due process rights were not violated because the State was not going call the informant to testify. Rather, it rests its argument on *McLeod* and its progeny, where the informant either simply provided information or was present at the criminal transaction but did not play a primary role in the criminal activity. Unlike the informant in those cases, the informant in this case played a continuous, active, and primary role in the alleged crime. "[I]t was evident from the face of the" information the confidential informant "was a participant in and material witness to the sale." *Roviaro*, 353 U.S. at 65 n.15, 77 S. Ct. at 630 n.15. The testimony of the informant, thus, is relevant to a material issue in the case. Apart from Walston, the confidential informant was the only eyewitness to and an active participant in the drug sale itself. While the officers who testified could hear some of the interaction between the confidential informant and Walston, they could not see what was happening and cross-examination of the officers was "hardly a substitute for an opportunity to examine the [woman] who had been nearest to [her] and took part in the transaction." *Roviaro*, 353 U.S. at 64, 77 S. Ct. at 629.

¶24 Despite the informant's active, continuous, and primary role in the alleged crime, the State argues Walston has provided only mere conjecture or supposition about the

possible relevancy of the informant's testimony and failed to show the informant's testimony would significantly aid in establishing an asserted defense. But Walston has established the relevancy of the informant's testimony by virtue of the fact the informant played a continuous, active, and primary role in the crime with which Walston was charged. The parties were never in dispute the informant was a continuous, active, and primary participant in the criminal activity. Thus, the informant's role in the criminal activity and ability to provide testimony relevant to a material issue in the case was not mere speculation or conjecture.

¶25 Balanced against this is the public's interest in protecting the flow of information. In Montana, this includes considerations of continuing operational effectiveness of the informant and whether revealing the identity of the informant would subject her to "substantial risk." *See* § 46-15-324(3), MCA. By the time of Walston's second trial, Detective Barnes admitted the confidential informant was no longer working with law enforcement and had moved out of the area. Therefore, revealing the identity of the informant would not affect her continuing operational effectiveness. The State also failed to provide sufficient evidence to demonstrate that revealing the identity of the informant would create a *substantial* risk to the informant. The only evidence provided was a single question posed to Detective Barnes whether revealing the informant's identity would "compromise" her safety. There was no testimony or evidence presented, however, to

support this conclusion.[1]  The State offered no evidence Walston had engaged in, encouraged, or threatened violence in the past; any of Walston's known associates engaged in violence; or even general evidence regarding the violent nature of the drug trade in Park County. *See Babella*, 237 Mont. at 314-15, 772 P.2d at 877-78.  This single question with an affirmative response is wholly insufficient to demonstrate revealing the informant's identity would place her at substantial risk as required under § 46-15-324(3), MCA, especially when balanced against the relevance of the testimony the informant could provide as an eye witness to and a participant in the alleged criminal activity. *Compare McLeod*, 227 Mont. at 487-88, 740 P.2d at 675 (noting that the deputy sheriff had "explained how disclosure of the identity of the informant would interfere with the informant's continued operational effectiveness"); *Babella*, 237 Mont. at 314-15, 772 P.2d at 877-78 (reciting testimony from law enforcement officers that informants' safety was at risk because the defendant had made threats against the informants, nine guns had been found in her residence, and the defendant's boyfriend was "in the habit of using violence for enforcement").

¶26    This is not to say that any time an informant and the accused are the only two persons present during an alleged drug exchange, the informant's identity must be revealed.

---

[1] Further undermining this argument, the State posited in its briefing before this Court that Walston may have known the identity of the confidential informant by the time of the second trial based on her attorney's detailed cross-examination of the officers.  The State, thus, takes the incongruous position on appeal that Walston knew the identity of the confidential informant and yet the informant's safety may be jeopardized if the State revealed the identity of the informant to Walston.

14

But here, considering all "the particular circumstances" of the case, *Roviaro*, 353 U.S. at 62, 77 S. Ct. at 629, including the relevance of the testimony from the confidential informant as an eye witness to and participant in the alleged criminal activity—in fact, the only eye witness and participant other than Walston—balanced against the meager record provided of the public's interest in withholding the confidential informant's identity, the District Court erred in denying Walston's motion to compel disclosure of the informant's identity. We reverse and remand the case.

**CONCLUSION**

¶27 The District Court's order denying Walston's petition to disclose the identity of the confidential informant is reversed. Walston's conviction is vacated and the case is remanded for further proceedings consistent with this Opinion. If the State declines to disclose the identity of the confidential informant to Walston, the District Court must dismiss the charges against her.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

15