FILED

04/18/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0605

DA 20-0605

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 67

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

CLAY BRADY RIPPLE,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Fourteenth Judicial District,
In and For the County of Meagher, Cause No. DC 18-07
Honorable Randal I. Spaulding, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Chad Wright, Appellate Defender, Kristina L. Neal, Assistant Appellate Defender, Helena, Montana

       For Appellee:

              Austin Knudsen, Montana Attorney General, Michael P. Dougherty, Assistant Attorney General, Helena, Montana

              Burt Hurwitz, Meagher County Attorney, Ole Olson, Special Deputy County Attorney, White Sulphur Springs, Montana

Submitted on Briefs:  February 15, 2023

Decided:  April 18, 2023

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Clay Brady Ripple (Ripple) appeals from a Fourteenth Judicial District Court verdict of guilty for the offense of sexual intercourse without consent.  We affirm.

¶2      We restate the issues on appeal as follows:

*Issue One: Whether the District Court erred in excluding defense evidence on relevancy grounds.*

*Issue Two: Whether the District Court committed reversible error by admitting hearsay statements into evidence.*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3      On January 14, 2020,[1] the State charged Ripple with one count of sexual intercourse without consent, victim 12 years old or younger, in violation of § 45-5-503 (1) and (4), MCA.  The State alleged that Ripple had a sexual relationship with his cousin, J.Y., between May 2, 2016, and July 13, 2018, during which time Ripple was 18 years of age or older and J.Y. was 12 years of age or younger.[2]  Authorities had been alerted to the allegations after J.Y. told family members that she was worried that she might be pregnant with Ripple's child.[3]

---

[1] The State initially charged Ripple under § 45-5-503(4)(a), MCA, in August 2018, but the trial was continued, pursuant to Ripple's waiver of speedy trial rights, due to lengthy discovery and plea negotiations before the State filed its 2020 Amended Information.

[2] At the time of the 2020 trial, J.Y. was 14 and Ripple was 21.

[3] Subsequent testing determined that J.Y. was not in fact pregnant.

¶4     At trial, J.Y. testified that she would sometimes stay over at the Ripples' home, where she would sleep on the living room floor. She testified that after everyone had gone to sleep, she would sneak into Ripple's room to have sexual intercourse with him.

¶5     J.Y. testified that Ripple's brother, E.R., knew about the relationship. Likewise, J.Y.'s little brother, Jo.Y., testified, over Ripple's hearsay objection, that E.R. had told him that J.Y. and Ripple were in a sexual relationship. E.R. subsequently testified, denying that he told Jo.Y. about a sexual relationship between J.Y. and Ripple and denying that he was aware of such a sexual relationship at all.

¶6     J.Y. also testified that she had had sexual intercourse with Ripple in 2015.[4] J.Y. had made this allegation in early 2016, but subsequently recanted her story during a forensic interview with the sheriff, stating that she "lied" to get "attention." The sheriff testified at trial that he had had doubts about her recantation, but charges were never filed with regard to those allegations.

¶7     Ripple's defense was that J.Y. had once again fabricated the present allegations against Ripple in an effort to gain attention. Ripple attempted to present testimony by his grandmother to show that, shortly before J.Y.'s most recent accusations against Ripple, J.Y. was likely to have overheard family members discussing the sexual assault and resulting pregnancy of a relative whose wedding was taking place. The District Court sustained the State's objection, concluding that the connection of such evidence to issues in the case was "too tenuous."

---

[4] The State did not charge Ripple on the 2015 allegations.

3

¶8     A jury returned a guilty verdict and Ripple was sentenced to 25 years, 18 suspended, with no eligibility for parole.  Ripple challenges the evidentiary rulings described above.

## STANDARD OF REVIEW

¶9     We review a lower court's evidentiary rulings for abuse of discretion, though interpretation of the rules of evidence and questions of whether a defendant's due process rights were violated are reviewed de novo.  *State v. Hauer*, 2012 MT 120, ¶ 23, 365 Mont. 184, 279 P.3d 149; *State v. Colburn*, 2018 MT 141, ¶ 7, 391 Mont. 449, 419 P.3d 1196; *State v. Blaz*, 2017 MT 164, ¶ 10, 388 Mont. 105, 398 P.3d 247.

## DISCUSSION

¶10    *Issue One: Whether the District Court erred in excluding defense evidence on relevancy grounds.*

¶11    Ripple first takes issue with the District Court's decision to exclude defense testimony regarding a family conversation about a relative who had become pregnant due to a sexual assault.  Under M. R. Evid. 402, "[e]vidence which is not relevant is not admissible."  Evidence is relevant if it tends to make "any fact that is of consequence to the determination of the action" more or less probable, including "evidence bearing upon the credibility of a witness."  M. R. Evid. 401; *State v. Pulst*, 2015 MT 184, ¶ 24, 379 Mont. 494, 351 P.3d 687.

¶12    Here, Defense Counsel's proffer of proof before the District Court was that (1) the assault on J.Y.'s relative "was common knowledge in the family and potentially would have been talked about" during the relative's wedding and in the family home, (2) that J.Y. attended the wedding and was usually attentive to adult conversation, and (3) that J.Y.

4

made her allegations against Ripple only a week or two after that wedding. Defense Counsel argued that a jury could imply from these facts that J.Y. had fabricated her allegations against Ripple. The District Court noted that there was no other evidence supporting the inferences (a) that J.Y. had actually heard these conversations or, if she had, (b) that these conversations might have factored into her disclosure. The District Court concluded that the connection between the proffered testimony and the veracity of J.Y.'s allegations was "just too tenuous." On appeal, Ripple appears to argue that this evidence suggested that J.Y. decided to fabricate her own allegations that she might be pregnant in an effort to gain attention or otherwise attempt to emulate her relative who was the subject of conversation during the wedding. We agree with the District Court that the probative value of this proffered testimony was vanishingly insubstantial. Therefore, we cannot conclude that the District Court's exclusion of this evidence on relevancy grounds was an abuse of discretion under M. R. Evid. 401 and 402.

¶13 On appeal, Ripple argues that the District Court's decision violated his constitutional right to present a complete defense. *See Hauer*, ¶ 24; *Chambers v. Mississippi*, 410 U.S. 284, 302-03, 93 S. Ct. 1038, 1049 (1973). Defense Counsel did not raise a constitutional argument before the District Court, focusing instead on the evidentiary standard discussed above. Thus, to the extent Ripple now argues that the District Court's ruling violated his constitutional right to present a defense, above and beyond the evidentiary standard at hand, this argument was not preserved for appeal. Unpreserved arguments are reviewable only under the rubric of plain error, under which this Court may, in its discretion, review alleged errors implicating fundamental rights in

5

limited situations where failure to do so could result in a manifest miscarriage of justice, compromise the integrity of the judicial process, or leave open questions of the fundamental fairness of the proceeding. *State v. George*, 2020 MT 56, ¶¶ 4-5, 399 Mont. 173, 459 P.3d 854.

¶14 The constitutional right to present a defense closely tracks the evidentiary standard discussed above, as it is subject to "reasonable restrictions" and has only "rarely" been held to have been "violated by the exclusion of defense evidence under a state rule of evidence." *Hauer*, ¶ 24; *Nevada v. Jackson*, 569 U.S. 505, 509, 133 S. Ct. 1990, 1992 (2013); *Holmes v. South Carolina*, 547 U.S. 319, 326, 126 S. Ct. 1727, 1732 (2006); *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 1264 (1998). Courts may constitutionally exclude evidence that is "only marginally relevant." *Holmes*, 547 U.S. at 326, 126 S. Ct. at 1732. In light of the minimal, if any, probative value of the proffered testimony to the contested elements of the case, we do not find manifest injustice or compromised judicial integrity to be implicated here and do not review the matter further.

¶15 *Issue Two: Whether the District Court committed reversible error by admitting hearsay statements into evidence.*

¶16 Ripple challenges the District Court's admission of the following testimony by Jo.Y (J.Y.'s younger brother) regarding statements made by E.R. (Ripple's younger brother):

Prosecutor: All right. And do you know Clay Ripple?

Jo.Y: Yes.

Prosecutor: How do you know him?

Jo.Y: He's my cousin.

6

Prosecutor: Okay. [Jo.Y.], did you ever hear that [J.Y.] and Clay were having a sexual relationship?

Jo.Y: Yeah.

Prosecutor: How did you learn that?

Jo.Y: [E.R.]

Prosecutor: Who is [E.R.]?

Jo.Y: My cousin.

. . .

Prosecutor: And what did [E.R.] tell you?

Defense Counsel: I'm just going to object to the hearsay, Your Honor.

Court: Mr. Olson?

Prosecutor: Not offered for the truth of the effect on the listener, Your Honor.

Court: Overruled. You may answer.

Prosecutor: Go ahead.

Jo.Y: *He told me that Clay and [J.Y.] were having sexual intercourse.*

Prosecutor: Okay. What did you do when you heard that?

(Emphasis added.) Jo.Y. then related how he had then confronted J.Y. with the allegation and subsequently alerted another family member, which eventually resulted in the authorities being notified.

¶17 Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M. R. Evid. 801(c). Hearsay is generally not admissible at trial. M. R. Evid. 802. However, an

out-of-court statement offered to prove something other than the truth of the matter asserted is not hearsay and is, accordingly, generally admissible. *State v. Laird*, 2019 MT 198, ¶ 73, 397 Mont. 29, 447 P.3d 416. Thus, a "statement is hearsay only when the immediate inference the proponent wants to draw is the truth of the assertion"; the statement is non-hearsay if "the proponent can demonstrate that the statement is logically relevant on any other theory." *Laird*, ¶ 73; *Siebken v. Voderberg*, 2015 MT 296, ¶ 22, 381 Mont. 256, 359 P.3d 1073 (internal citations and quotations omitted). One such non-hearsay purpose for which an out-of-court statement may properly be admitted is to show the statement's effect on the listener's state of mind. *Laird*, ¶ 73; *City of Billings v. Nolan*, 2016 MT 266, ¶ 28, 385 Mont. 190, 383 P.3d 219.

¶18     The State argues that this testimony was not offered to prove the truth of the matter asserted—"that [Ripple] and [J.Y.] were having sexual intercourse"—but, rather, to show "how Jo.Y. first became aware" of the relationship and to "then explain what he did next," which was to confront J.Y. with the allegation. However, the State fails to demonstrate how Jo.Y.'s statement is "logically relevant on" this theory. *See Laird*, ¶ 73; *Voderberg*, ¶ 22. Why J.Y. asked his sister if she was in a sexual relationship with Ripple was not relevant to any fact at issue in the case. *See* § 45-5-503, MCA (person is guilty of sexual intercourse without consent if person has "sexual intercourse . . . with another person who is incapable of consent"). Neither was it relevant or necessary to the jury's understanding of how law enforcement's investigation proceeded.[5] *Cf. Nolan*, ¶ 28 (dispatch information

---

[5] Independent testimony established that J.Y.'s father brought her to the sheriff's office where J.Y. implicated Ripple and detailed the resulting investigation.

relayed to testifying officer that the vehicle present at the crime was registered to someone sharing the same last name as the defendant admissible as offered for non-hearsay purpose of explaining how law enforcement obtained a prior booking photo that was used to positively identify the defendant as the driver).

¶19 Not only do the statements lack any relevant non-hearsay purpose, but the State's use of these out-of-court statements during closing further underscored the obvious hearsay purpose of offering these statements. *See Laird*, ¶¶ 75-79 (examining prosecutor's opening remarks, questioning of other witnesses, and closing argument to determine that the "State clearly sought to have the jury believe" the truth of the matter asserted and that the statements were therefore inadmissible hearsay). In closing, the prosecutor argued that: "One side of this family says this is just a 'he said, she said' case, but you know that [Jo.Y.] found out about the relationship from [E.R.], and that [E.R.] knew from seeing it happen."

¶20 The State argues on appeal that the prosecutor properly referenced the statement to merely establish how Jo.Y learned of the relationship, asserting that, "[i]mportantly, because Jo.Y. gained his knowledge from E.R., and not J.Y., this undercut Ripple's argument that this was just a 'he said, she said' case." The State's argument essentially concedes a hearsay purpose: offering an out-of-court declaration to corroborate as true an account of the key fact in dispute—whether J.Y. and Ripple had been in a sexual

relationship.[6]  We conclude that E.R.'s alleged statement to Jo.Y. was hearsay and was erroneously admitted.

¶21     However, pursuant to the harmless error standard, this Court will not reverse a trial error that did not prejudice the defendant. *State v. Van Kirk*, 2001 MT 184, ¶ 40, 306 Mont. 215, 32 P.3d 735; § 46-20-701(1), MCA.  The hearsay rule is concerned with the potential for unreliable assertions to be presented to the jury without the veracity of those statements being tested through adversarial examination under oath.  *Chambers*, 410 U.S. at 298, 93 S. Ct. at 1047 (hearsay typically excluded because declarant's absence causes lack of "conventional indicia of reliability"; such as the "solemnity" of an oath; ability to subject declarant's assertion to cross-examination; and jury's ability assess declarant's "demeanor and credibility").  Thus, where the declarant testifies at trial and the opposing party is given the opportunity to examine the declarant regarding the statements at issue, "the improper admission of the declarant's out-of-court statements is considered harmless."  *State v. Mensing*, 1999 MT 303, ¶ 18, 297 Mont. 172, 991 P.2d 950; *State v. Veis*, 1998 MT 162, ¶ 26, 289 Mont. 450, 962 P.2d 1153 ("dangers that the hearsay rule seeks to avoid are not

---

[6] The prosecutor mentioned E.R.'s alleged statement again, while countering the defense narrative that J.Y. had fabricated her allegations:

> How do you explain [Jo.Y] saying the sort of complex thing that, well, "[E.R.] told me and I didn't believe him at first, and then I confronted [J.Y.] about it and she told me."  [Jo.Y.] is going to make up that complex of a story? Why not just say it, "I saw them, I saw them having sex," if everybody is making this up.

This argument had nothing to do with the effect E.R.'s revelation had on Jo.Y.  Rather, it had everything to do with the truthfulness of J.Y.'s allegation.  Arguably, the statement could have been admitted as rebuttal to the defense contention that Jo.Y. was fabricating the accusations, but it was not admitted for that purpose.

present" when a defendant has the opportunity to examine the declarant).  Here, Ripple had the opportunity to examine the declarant, E.R., regarding the alleged statement, under oath, at trial:

> Defense Counsel: Have you ever seen [Ripple] and [J.Y.] have sex?
>
> E.R.: No. Not at all.
>
> Defense Counsel: Aside from someone telling you what this case is about, has anyone told you that [Ripple] and [J.Y.] had sex?
>
> E.R.: No

Moreover, the prosecutor then cross-examined E.R. as follows:

> Prosecutor: Do you have any idea of why [Jo.Y.] would think that you told him that maybe [Ripple] and [J.Y.] were involved in some kind of relationship?
>
> E.R.: I have no idea.
>
> Prosecutor: You didn't tell him that?
>
> E.R.: No.
>
> Prosecutor: Okay.  Nothing you could have said that he might have misunderstood?
>
> E.R.: No.
>
> Prosecutor: Okay.
>
> E.R.: I didn't say anything.

¶22    Thus, the veracity of E.R.'s alleged prior statements to Jo.Y. was called into question in the most powerful way—E.R. denied their truth (and existence) from the witness stand.  The jury was properly alerted to the potential unreliability of the initial alleged statements, sufficiently serving the purpose of the hearsay rule.  Notwithstanding

11

the State's use of the hearsay during closing argument, the error was harmless and is not subject to reversal on appeal.

## CONCLUSION

¶23 Because the erroneous admission of hearsay evidence did not prejudice Ripple's defense, and the District Court did not err in excluding irrelevant defense testimony, Ripple is not entitled to a reversal of his conviction here.

¶24 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR