FILED

04/02/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0551

DA 21-0551

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 70N

STATE OF MONTANA,

Plaintiff and Appellee,

v.

STEPHEN ROSS BENNETT,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-20-312
Honorable Robert L. Deschamps, III, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender, Kristina L. Neal, Assistant Appellate
Defender, Helena, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Cori Losing, Assistant
Attorney General, Helena, Montana

Kirsten H. Pabst, Missoula County Attorney, Meghann Paddock, Deputy
County Attorney, Missoula, Montana

Submitted on Briefs: February 28, 2024

Decided: April 2, 2024

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Defendant Stephen Ross Bennett (Bennett) appeals a September 10, 2021 Judgment after he was convicted by a jury in April 2021 of criminal endangerment and of being a commercial driver in possession of alcohol. Bennett argues the District Court's trial comments to his attorney and to the prosecution violated his constitutional right to a fair trial, and, therefore, this Court should exercise plain error review to reverse his convictions and remand for a new trial. We affirm.

¶3      Bennett worked as a semitruck driver and was driving from Wisconsin to Oregon carrying a load of large paper rolls, which weighed about 2,000-3,000 pounds each. Bennett began to feel ill during the drive, stopped to sleep, and took off again after feeling better. When he was about twenty miles east of Missoula, Montana, he texted his dispatch about his illness and said he planned to stop in Missoula to seek medical care from a doctor. As Bennett was driving his tractor-trailer in the passing lane of Interstate 90, Ronnie Vogel (Vogel), another truck driver, was trailing Bennett in the non-passing lane. An SUV overtook Vogel and approached Bennett's vehicle from behind. While Bennett was apparently looking at his mirrors and deciding whether he should move into the non-

2

passing lane to accommodate the SUV, he drifted to the left and onto the dirt-covered shoulder of the interstate. Bennett lost control and hit the left guard rail, which propelled his tractor-trailer toward the right side of the road. As he tried to correct course, he collided with the right guard rail. Consequently, the passenger side of his trailer was ripped open and compromised.

¶4 Bennett stopped his truck on the shoulder of the interstate and got out to inspect the damage. Vogel, who had witnessed the crash, stopped about twenty-five feet from Bennett's semitruck and called 911. While Vogel was on the phone, he saw a large paper roll falling out of the back of Bennett's trailer, and then saw Bennett exiting the cab, observing that Bennett "almost fell out of the truck face first." Vogel asked Bennett if he was okay, and Bennett responded by asking if he had caused any damage to Vogel's vehicle. Despite Vogel saying he had not, Bennett assured Vogel that his company would take care of it.

¶5 Bennett inspected only the left side of his truck by walking from the cab toward the rear of the trailer. He snapped photos of some of the damage on his cell phone before quickly getting back into the driver's seat of the truck and telling Vogel that a tow truck was unnecessary because, despite his awareness the outside tires had blown, he still had one row of dual tires intact on the driver's side. Bennett shifted the truck into reverse and then back into drive several times as he maneuvered back onto the pavement, then drove off toward Missoula. Law enforcement initiated a pursuit of Bennett after speaking with Vogel. Missoula County Sheriff Corporal Manraksa caught up with Bennett near a

3

construction zone at mile marker 112. He could see a large paper roll hanging out of the back of Bennett's trailer. He backed off a distance because of this danger but activated his emergency lights to signal Bennett to pull over. Bennett saw Corporal Manraksa but did not pull over immediately, apparently wanting to continue to a truck stop before stopping because shoulder space was reduced on a portion of the interstate. Montana Highway Patrol Trooper Gagnon caught up to Corporal Manraksa, who was following Bennett. When Bennett showed no signs of stopping on the interstate, a Missoula County detective was called to set up spike strips near the Bonner, Montana exit. Bennett, however, exited the interstate at the Bonner exit and pulled over near a restaurant.

¶6 The officers detained Bennett. During their interactions with Bennett, officers reported strange behavior and speech, along with unusually slow response time to questioning. Corporal Manraksa reported smelling alcohol on Bennett's breath. Trooper Gagnon inspected Bennett's semitruck and inquired about the crash. At the time, Bennett claimed that another car swerved into him, although no such vehicle was ever witnessed or found. Trooper Gagnon and another Trooper then conducted Standardized Field Sobriety Tests on Bennett. He scored a four out of eight clues on the walk and turn test, and four out of four clues on the one leg stand. Based on these results, Trooper Gagnon requested a preliminary breath test from Bennett, who refused. His refusal was noted by Trooper Gagnon. Bennett did not then mention his illness, apparently concerned about liability issues. Bennett consented to a search of his truck by a DOT Officer to obtain insurance and registration documents. During the search, an empty rum bottle was found near the

4

cab's garbage container, as well as a box containing bottles of rum and whiskey. When asked directly whether he had been drinking alcohol, Bennett responded no.

¶7 Bennett was charged with criminal endangerment, possession of alcohol by a commercial driver, and driving under the influence. During the April 2021 trial, Bennett's attorney conducted lengthy questioning of Vogel about how paper rolls are loaded into a semitruck. In the middle of this questioning, before the jury, the District Court interjected:

> The Court: [Defense counsel], let me point out that it's quarter to 5:00. You're spending hours, literally, on all kinds of stuff that doesn't have anything to do with this case. But, can you try to wrap this up by 5:00?
>
> Defense: I'll do what I can, Your Honor.
>
> The Court: Or are we going to have this witness back in the morning?
>
> Prosecutor: Your Honor, I apologize, the State also has one other witness who I think—
>
> The Court: Well, we're not going to get to him. You should be objecting to irrelevant testimony. I have to keep interjecting myself in the middle of this. You know, this case is just dragging. And it doesn't matter who loaded the damn truck.
>
> Prosecutor: Agreed, Your Honor. Agreed. I absolutely agree.

Bennett's attorney made no objection to the comments, but outside the presence of the jury offered to the District Court an explanation about why he was addressing the loading of the truck:

> Defense: If I may, I don't want to belabor the point of loading the van or anything. I want the Court to understand why that's so important, is that he—he's being accused of not containing those rolls properly. And without talking about how they're packaged and by whom they're packaged, I can't establish that the dry van's structure intended to hold them in.

5

The Court responded to Bennett's attorney by opining on the driver's responsibility, including drawing on its own personal experience:

> The Court: Well, the witness testified it's one of the responsibilities of the trucker to make sure that the load is secure. It is also the responsibility of the truck driver to look in the rearview mirror and he ought to be able to see that one side of his trailer is sticking out and something's hanging off the load. I mean, I've driven – not semis, but I've driven loads damn near as big as the one he's hauling with round hay bales, and, you know, I'm constantly looking to see what's going back there. And if I lose something, I – you know, I see it go and it – but, you know, that's why you should strap the load. I used to think I could just put them on and they'd stay there, but they don't; you have to strap them. But there is a responsibility on the part of a truck driver to keep his load on the truck and, if he sees a problem, to stop and do something about it.

Later, the Court told Bennett's attorney that it no longer wanted to hear about how the truck was loaded, but instead "about your client's actions."[1]

---

[1] The District Court was also frustrated by other issues that caused delay, such as Vogel's propensity of offering long answers to questions during defense counsel's cross-examination, and the need to control him, as discussed in chambers:

> The Court: [Y]ou ask him a question that can be answered yes or no, and he goes off on a five-minute rampage on all kinds of stuff, including things that have already been said two or three times. The cross-examiner needs to tighten up the guy and say, Sir, this is a yes or no question; answer it yes or no and don't elaborate.

> Defense: I think the effect on the jury, I'm sure you understand, I'd rather you piss off the jury than me.

> The Court: Well, maybe. But that's . . . the whole idea of cross-examination, is to control the witness. That's why you can ask leading questions. That's why you can ask yes or no questions. The prosecution can't do that on direct; they got to throw him the ball with the hope he stays somewhere within the ball field.

¶8 Bennett testified in his own defense, attributing his behavior at the scene to illness and fever. After several hours of deliberation, the jury was sent home for the night. After deliberating for about an hour the next day, the jury rendered a guilty verdict on the criminal endangerment charge and possession of alcohol by a commercial driver charge. The jury did not reach a verdict on the DUI charge, which was later dropped by the State. Bennett received a six-year deferred sentence for criminal endangerment and fined $250 for the possession of alcohol by a commercial driver. He appeals.

¶9 "Generally, this Court does not address issues raised for the first time on appeal." *State v. Favel*, 2015 MT 336, ¶ 13, 381 Mont. 472, 362 P.3d 1126. However, we may use our discretion to review claimed errors that implicate a criminal defendant's fundamental constitutional rights even when there was no objection made at trial, if "failing to review the claimed error may result in a miscarriage of justice, may leave unsettled the question of the fundamental fairness of the trial or proceedings, or may compromise the integrity of the judicial process." *State v. Wagner*, 2009 MT 256, ¶ 12, 352 Mont. 1, 215 P.3d 20. Nevertheless, we employ such review "sparingly, on a case-by-case basis." *State v. Lackman*, 2017 MT 127, ¶ 9, 387 Mont. 459, 395 P.3d 477.

¶10 Bennett raises the sole issue of whether the District Court's comments at trial violated his constitutional right to a fair trial. He argues these comments disparaged his defense and were "so biased as to assume guilt" of Bennett such that the District Court effectively abandoned its role as an impartial actor and became an advocate for the State.

He requests that this Court undertake plain error review to ensure the fundamental fairness of the proceeding against him.

¶11 The right to a fair trial is protected by both the U.S. and Montana Constitutions. *See* U.S. Const. amend VI; Mont. Const. art. II, § 24. We have explained that "the role of the trial judge is to regulate the proceedings and ensure that the trial is fair." *State v. Price,* 2006 MT 79, ¶ 21, 331 Mont. 502, 134 P.3d 45. "To this end, a judge must avoid 'officious interference' in the proceedings." *State v. Walton*, 2014 MT 41, ¶ 19, 374 Mont. 38, 318 P.3d 1024 (internal citation omitted); *see also Toavs v. Buls*, 2006 MT 68, ¶ 17, 331 Mont. 437, 133 P.3d 202 ("[T]he use of such turns of phrase is not appropriate from the bench and convey an attitude of disrespect about the judicial process. Words matter."). While a judge "is not required to remain silent and passive throughout a jury trial," it is the "[judge's] duty to conduct the trial in a manner calculated to ensure fairness, avoid needless consumption of time, keep from the jury extraneous matters likely to mislead them, and facilitate the ascertainment of truth." *Price*, ¶ 22.

¶12 Bennett's defense to criminal endangerment was that he did not have knowledge that the trailer has been damaged, and that damage to the trailer occasioned by a shifting load would have been unexpected since the large paper rolls should have been loaded to prevent them from moving. The District Court disagreed with the propriety of this theory, but regardless of the validity of its concerns, discussed below, the problem is that it raised the disagreement in front of the jury, and in no uncertain terms, stating that "it doesn't matter who loaded the damn truck" and that time was being spent "on stuff that doesn't

8

have anything to do with the case." The District Court added its personal experience regarding loading and driving trucks when the subject was later brought up by defense counsel outside the presence of the jury. These comments were ill-advised. While the role of the trial judge is to "regulate the proceedings," *Price*, ¶ 21, this would not extend to the comments made here before the jury and later in chambers. Condemnation of an attorney's strategy can influence jurors, who generally "have great confidence in and respect for the presiding judge and are vigilant in their attention to whatever is said by him." *State v. Fuller*, 34 Mont. 12, 26-27, 85 P.3d 369, 374 (1906). Consequently, we must conclude the District Court's comments were error.

¶13 A District Court's improper commentary in open court constitutes trial error that is reviewed for prejudicial effect. *Price*, ¶¶ 21-23; *State v. Forsythe*, 2017 MT 61, ¶ 41, 387 Mont. 62, 390 P.3d 931. "By nature, trial error is amenable to comparative qualitative assessment of the 'prejudicial impact' of the tainted evidence relative to the other trial evidence." *Forsythe*, ¶ 41 (citing *State v. Van Kirk*, 2001 MT 184, ¶ 40, 306 Mont. 215, 32 P.3d 735). Pursuant to § 46-20-701(1), MCA's harmless error standard, "this Court will not reverse a trial error that did not prejudice the defendant." *State v. Ripple*, 2023 MT 67, ¶ 21, 412 Mont. 36, 527 P.3d 951. Because a trial error is "amenable to qualitative assessment," we must evaluate the context in which errant statements are made or erroneous evidence admitted. *See State v. Parker*, 2006 MT 258, ¶ 23, 334 Mont. 129, 144 P.3d 831. Further, as noted above, the error here is analyzed for satisfaction of plain error

review standards, including whether it impacted the fundamental fairness and integrity of the proceeding. *Wagner*, ¶ 12.

¶14     It is evident from the record that the District Court had no purpose to "influence the minds of the jurors concerning [Bennett's] guilt, but rather to address the real possibility that they could be misled by extraneous matters or base their verdict on incompetent evidence." *Price*, ¶ 23. On substance, and given how the case was charged and tried, the District Court was not incorrect to conclude that Bennett's theory about the loading of the truck was extraneous to issues to be decided by the jury. Criminal endangerment occurs when a person "knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another." Section 45-5-207(1), MCA. Specifically, here, the State alleged in the Information that Bennett "knowingly engaged in conduct that created a substantial risk of death or serious bodily injury to Ronnie Vogel and/or other drivers on I-90W between mile marker 118 and 113, to wit:  drove at highway speeds with an open trailer containing unsecured 3,000 pound rolls of paper on Interstate 90."  The jury instruction echoed these elements.  The inquiry for purposes of the charge, therefore, focused on Bennett's conduct after the crash, including his driving of the truck and trailer after it had been damaged, even in defiance of law enforcement's efforts to stop him.  Even if the large paper rolls in the trailer had been incorrectly loaded, this would not extinguish Bennett's obligation to act responsibly so as not to endanger others, given that his actions were taken after a crash, when he was aware the semitruck's tires had blown, and when he was aware the vehicle had been smashed on both sides, but nevertheless failed to inspect

the passenger side of the truck. The charge was not premised upon an improperly loaded trailer.

¶15 Given the framing of the charges, we disagree with Bennett's argument that the District Court's comments compromised the integrity of the trial. While the comments were improper, the District Court did not comment on or violate Bennett's presumption of innocence, addressed only a particular line of cross examination of witness Vogel, did not offer erroneous observations about the relevance of the evidence and, in our review, did not compromise the outcome or the fundamental fairness of the proceeding. The evidence against Bennett on the charge of criminal endangerment was strong, but the jury did not convict him of DUI.

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the District Court erred by commenting on Bennett's trial defense, but that error was harmless under the facts and circumstances of the case, and it did not undermine the fundamental fairness of the proceeding.

¶17 Affirmed.

/S/ JIM RICE

We concur:

/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR